1445-11

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CALVITA J. FREDERICK, et al., | ) | |
| Plaintiff, | ) | No. 07 C 7044 |
| | ) | |
| v. | ) | Honorable Judge Manning and |
| | ) | Honorable Mag. Judge Valdez |
| SELECT PORTFOLIO SERVICING, INC. | ) | |
| DLJ MORTGAGE CAPITAL, and | ) | Circuit Court of Cook County, Illinois |
| PIERCE & ASSOCIATES, | ) | Case No. 07 L 12507 |
| Defendants. | ) | |

**PIERCE & ASSOCIATES',
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, Pierce & Associates, move to dismiss Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state claims upon which relief can be granted.

**I.   INTRODUCTION**

This case is nominally brought by four Plaintiffs but is really the brainchild of Plaintiff Calvita Frederick ("Frederick")[1] who is the owner of property located at 4753 S. Dorchester Ave., Chicago, IL ("the Property"), and the sole borrower on a Note secured by a mortgage on that Property. (Compl. Ex. "B" Attachment to Payoff Letter; Ex. "D" Affidavit of Calvita Frederick). The other plaintiffs are her minor children and her ex-husband who is ". . . currently employed outside of the United States . . . " (Compl.¶¶ 2-4, 82, 84). Frederick is a defendant in a mortgage foreclosure action pending in Cook County which has been stayed by her current bankruptcy. For all of the injuries she claims she suffered at the hands of the Defendants she has redressed all of them. She has received the payoff quote she sought and successfully had the

---

[1] Calvita Frederick, the named Plaintiff and Calvita Sowell, Attorney of Record, are the same person. (*See* Compl. ¶11, referring to Plaintiff, Calvita F. J. Frederick-Sowell.)

foreclosure sale set aside. She presently enjoys the freedom to do everything she said she ever wanted to do with the property.

There are three named Defendants in this matter: DLJ Mortgage, Inc. ("DLJ"), the current holder of the Frederick's Mortgage; Select Portfolio Servicing ("SPS"), DLJ Mortgage, Inc.'s servicing agent; and Pierce and Associates P.C. ("Pierce") ". . . attorneys of record for DLJ . . . in the . . . Foreclosure in the Circuit Court of Cook County . . . entitled *DLJ Mortgage Capital, Inc. vs. Calvita Frederick, et. al.*, 06 CH 2321" ("the state court foreclosure"). (Compl. ¶¶ 5, 6 and 7).

The ten counts of the Complaint are plead against "Defendants" generally. Plaintiffs draw no distinction among the Defendants to indicate which one participated in which wrongful behavior. The best that Pierce can make out is that they complain about two episodes involving some or all of the Defendants. The first episode relates to an attempt by Frederick to sell the Property to Thomasina Dixon in 2005. Frederick asserts that she entered into a contract with Dixon (Compl. Ex. "A" Contract ("Contract")) on March 25, 2005. The Contract was valid for a maximum of 60 days from the date of execution. It therefore expired on May 24, 2005. Frederick contends that she was prevented from completing the transaction by the Defendants (she does not tell us which ones) when they failed to provide payoff figures. (Compl. ¶14). For simplicity sake, this episode will be referred to as the "Dixon Contract".

The second episode stems from the judicial sale of the Property in the state court foreclosure. The wrongdoing attributed to Pierce was that it allegedly misinformed Frederick that the scheduled judicial sale of the Property was canceled when in fact it was not. Plaintiffs contend that Pierce's misrepresentation prevented an investor from bidding at the Sheriff's Sale, which would have allowed Frederick to "save her home." (Compl. ¶¶ 37, 38, 45 and 46).

Instead, the Property was sold to DLJ for $598,356.74.  (Compl. ¶38). But as Fredrick readily admits in her Complaint, she successfully moved the state court foreclosure judge to have that sale set aside. (Compl. ¶40; Ex. "G", Circuit Court Order). Thus, by Frederick's own account any injury she suffered by the alleged misrepresentation by Pierce was annulled.  Frederick enjoys the right to bid, or have someone bid on her behalf, when the sale is rescheduled.[2]  The allegations centering on this episode are referred to as the "Foreclosure matters."

## II.    STANDARDS FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).

Federal Rule of Civil Procedure 8(a) requires a pleader to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," such that it will give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a); *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998).  "For fair notice to be given, 'a complaint must at least include the operative facts upon which a plaintiff bases his claim.'" *Kyle,* 144 F.3d at 455; *see also Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998) ("a complaint must contain facts sufficient to state a claim as a matter of law"). Conclusory pleading is permitted but *only* "so long as 'the conclusions . . . provide the defendant with minimal notice of the claim.'" *Frieri v. City of Chicago*, 127 F.Supp.2d 992, 994-95 (N.D.Ill. 2001) (internal citations omitted) (emphasis added).

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) should be granted when the pleadings fail to state a claim upon which relief may be granted.  A Rule 12(b)(6) Motion tests the sufficiency of the facts and legal theories alleged in the complaint, because "[a]t a minimum,

---

[2] A new sale has not been set because Frederick filed for Bankruptcy protection shortly after successfully having the first sale set aside. 07 B 21545 Chapter 13, *Calvita J. Frederick a/k/a Calvita J. Frederick-Sowell a/k/a Calvita J. Sowell, debtor*.  The automatic stay provided by the Bankruptcy Code prohibits the mortgagee from setting a new sale. 11 U.S.C. §362.

3

a complaint must contain facts sufficient to state a claim as a matter of law." *Hickey v. O'Bannon,* 287 F.3d 656, 657 (7th Cir. 2002). In evaluating the sufficiency of a complaint upon a Rule 12(b)(6) Motion, the Court should not "accept as true legal conclusions or unsupported conclusions of fact." *Id.* at 659. As explained below, Plaintiffs have failed to state actionable claims against Pierce and thus their Complaint should be dismissed.

### III. THE PLAINTIFFS FAIL TO STATE COGNIZABLE CLAIMS AGAINST PIERCE UNDER THE FAIR HOUSING OR THE CIVIL RIGHTS ACTS.

Counts One and Two are respectively brought under Section 3605(a) of the Fair Housing Act ("FHA") (42 U.S.C. §3605) and Section 1982 of the Civil Rights Act ("CRA") of 1968 (42 U.S.C. §1982) and suggest that the Plaintiffs were discriminated against when the Defendants did not provide Frederick a payoff letter in connection with the Dixon Contract; Counts Three and Four respectively assert violations of the FHA and CRA relating to the foreclosure matter. They say that Pierce's misinforming Frederick of the sale amounted to a violation of Section 3605(a) of the FHA and Section 1982 of the CRA.

#### A. THE CLAIMS RELATING TO THE DIXON CONTRACT ARE TIME BARRED UNDER BOTH THE FHA AND CRA.

The claims arising under the FHA or CRA pertaining to the Dixon contract are time-barred. Violations of the FHA brought by an individual in district court must be raised "not later than 2 years after the occurrence . . . of an alleged discriminatory housing practice." 42 U.C.S. §3613.[3] Although 42 U.S.C. §1982 does not provide a statue of limitations, federal courts are to borrow and apply "the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). The closest analogous state law claim to a civil

---

[3] Plaintiff mistakenly relies on 42 U.S.C. §3612 to aset this court's jurisdiction, Compl. ¶4, however that section provides for Enforcement by the Secretary of Housing and Urban Development not private persons, 42 U.S.C. §3613.

4

rights claim is one for personal injury, for which the limitations period in Illinois is two years. *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1528 (7th Cir. 1990); *Burkes v. McDonald's Corporation*, 1997 WL 28300 p. 3 (N.D.Ill.). Consequently, a claim under the CRA must also be brought within two years of the injurious occurrence as well. *In re African-American Slave Descendants Litigation*, 304 F.Supp. 1027, 1068 (N.D.Ill. 2004), *citing, Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 563 (N.D.Ill. 1998).

The claims raised in Counts One and Two relate to the Dixon contract; specifically, Defendants' failure to provide "a payoff statement and other closing documents *necessary to complete the sale*". (Compl. ¶14 (emphasis supplied)). Plaintiffs do not allege when Frederick made the demand but because the contract expired in May 2005, in order for it to be actionable it had to have occurred before that time. If it occurred afterwards it would not have been "necessary to complete the sale" because the contract was no longer in force. Thus, the only possible inference to be drawn from the italicized portion of this allegation is that Pierce's alleged misconduct had to have occurred before the time where it would have made a difference, *i.e.,* before May 2005. Because this action was not brought until September 2007, it is time-barred. *Honorable v. Easy Life* at 563.

    **B.**    **THE CLAIMS PERTAINING TO THE DIXON CONTRACT PREDATE PIERCE'S INVOLVEMENT WITH FREDERICK.**

Even were the discrimination claims not time-barred, as far as the Dixon contract goes, under no scenario could Pierce be found to have violated the Plaintiff's civil rights because Pierce was not in the picture at the time the demand for the payoff was made. It was not even on the scene when the Dixon contract was in existence. The allegations of the Complaint show that the contract expired well before Pierce became involved in these matters. (Compl. Ex. "A"). Plaintiffs clearly try to avoid this fact by lumping all the Defendants together. This violates Rule

5

8(a); but more importantly it is clear that Pierce first became involved with Frederick when it was retained by DLJ to file the foreclosure action in 2006. (Compl. ¶7). As such, it could not have been responsible for providing a payoff letter to Frederick in the spring of 2005. (Compl. Counts I and II ¶ 14-16). Because no causal connection exists between Pierce's conduct and the injury Frederick is alleged to have suffered, these claims must be dismissed.

      **C.**    **PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER THE FHA PERTAINING TO THE FORECLOSURE MATTER.**

The Plaintiffs also contend that they were victims of discrimination when Pierce allegedly misled Frederick that the sale had been postponed. These allegations are found in Counts Three and Four. The FHA claim based on these facts because Pierce was not engaged in a "residential real estate-related transaction" as that term is defined by the FHA. Counts Three and Four must be dismissed.

Under the FHA it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of . . . race." 42 U.S.C. §3605(a). To be liable the defendant must be engaged in "residential real estate-related transactions". *Mich. Protection & Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 346 (6th Cir. 1994); *Beard v. Worldwide Mortgage Corp.,* 354 F.Supp.2d 789 (W.D.Tenn. 2005). Persons are engaged in residential real estate-related transactions when they (1) make loans, (2) purchase loans, (3) provide financial assistance, (4) sell residential real property, (5) broker residential real property, or (6) appraise residential real property. §3605. Unless the defendant's conduct falls into one of these categories the Defendant is not engaged in the business of "residential real estate-related transactions" and cannot be liable under the FHA. *Home Quest Mortg. LLC v. American Family Mut. Ins. Co.,* 340 F.Supp.2d 1177 (D.Kan. 2004).

Here, Pierce is alleged only to be the attorney for the mortgage holder DLJ in the underlying state court foreclosure action to foreclose the indebtedness. (Compl. ¶7). It did not engage in conduct that even under the most liberal standards could be deemed a residential real estate-related transaction. It did not make the mortgage loan to the plaintiff, purchase the loan, provide financial assistance, sell, broker or appraise residential real property. It merely represented a party in civil litigation.

In *Perino v. Cole*, 2005 WL 1174527 (W.D. Wash. 2005), the plaintiff sued a private water association and its attorney, for violating Section 3605(a) of the FHA. The plaintiff alleged that the defendants, including the attorney, interfered with his efforts to communicate with other members of the association by distributing flyers and asking questions at association meetings. He also alleged that the defendants ordered him to stop applying for state and federal grants including "grants for buying homes . . . to rent to low income families". The court found these allegations failed to state a claim under the federal Fair Housing Act because no defendant - including the attorney - was an "entity whose business includes engaging in residential real estate-related transactions." 42 U.S.C. §3605(a).

Pierce's business, like the attorney in *Perino*, does not include engaging in residential real state transactions. See, *Home Quest Mortg. LLC v. American Family Mut. Ins. Co., supra*. (claim dismissed because contractors hired to repair Plaintiff's home following fire damage were not involved in a residential real estate-related transaction); *Beard v. Worldwide Mortgage Corp.* 354 F.Supp.2d 789 (W.D.Tenn. 2005) (settlement agents are not engaged in real estate-related transaction so FHA claim dismissed); *Doukas v. Metropolitan Life Ins. Co.,* 882 F.Supp. 1197 (D.N.H. 1995) *superseded by statute on other grounds as stated in Munroe v. Compaq Computer Corp.,* 229 F.Supp.2d 52, 66-67 (D.N.H. 2002) (while mortgage disability insurance is clearly a

form of financial protection against the loss of one's home due to a period of disability, it is not a residential real estate-related transaction for purposes of a claim arising under the FHA).

Plaintiffs may perhaps argue that Pierce engaged in "financial assistance" but that contention would be risible for it can hardly be said that foreclosing a mortgage is assisting the mortgagor in any way. The limits of how far a court can reach to determine if an activity constitutes "financial assistance" in a residential real estate-related transaction was examined by the Seventh Circuit in *NAACP v. American Family,* 978 F.2d 287 (7th Cir. 1992). There, the court held that plaintiffs' claim of discrimination in the sale of property insurance was not legally cognizable under section 3605. *Id.* The Court reasoned that it would "strain language past the breaking point to treat property or casualty insurance as 'financial assistance.' " *Id.* at 292. The *American Family* court noted that property insurance did not constitute a loan or "subsidy." "[Property insurers] do not 'assist' customers even in the colloquial sense that loans are 'assistance' (a lender advances cash, with repayment deferred)". Thus the term "financial assistance" as it appears in 42 U.S.C. §3605(b)(1) must be narrowly construed. 978 F.2d at 297.

Thus, if property insurance, which most homeowners need to obtain to qualify for a mortgage is not "financial assistance" it can hardly be said that representing the lender in a foreclosure suit would be. Pierce certainly did not "assist" the Plaintiff by any stretch of the imagination. Thus, where a defendant is not an "entity whose business includes engaging in residential real estate-related transaction" there can be no claim under 42 U.S.C. §3605(a). The FHA claims relating to the Foreclosure matter asserted in Counts Three and Four must therefore be dismissed.

### D.  PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER THE CRA PERTAINING TO THE FORECLOSURE MATTER.

A plaintiff alleging a Section 1982 claim must "allege with specificity facts sufficient to show or raise an inference of (1) the defendant's racial animus; (2) intentional discrimination; and; (3) that the defendant deprived plaintiff of his rights [to inherit, purchase, lease, sell, hold, or convey property] because of race." *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 797 (3d Cir. 2001); *Puglisi v. Underhill Park Taxpayer Ass'n,* 947 F.Supp. 673, 700 (S.D.N.Y. 1996), *aff'd,* 125 F.3d 844. Plaintiffs have failed to meet these pleading requirements in regard to the foreclosure matter.

First, there are no specific facts plead to suggest that Pierce was motivated by or bore any racial animus toward the Plaintiffs.  Plaintiffs allege the Defendants "interfered with [Frederick's] right to transact business . . . by denying [Frederick] and her investor the opportunity to attend" the foreclosure sale, (Compl. ¶42), but they do not say that this "interference" was due to Frederick's race. (Compl. ¶47).

Nor are any facts plead showing intentional discrimination or that Pierce deprived Frederick of her rights on account of her race.

Plaintiffs allege that the Defendants continue to cooperate with "other parties" with similar qualifications to Frederick, (Compl. ¶43), but they do not allege that those other parties are not African-American or that Pierce treated Frederick differently than the "other parties" "on account of race."  There are no facts plead to support the inference that Pierce even knew Fredrick was African-American.  It is only in their tort claims, rather than the Civil Rights claims, that Plaintiffs ascribe specific knowledge to the Defendants.  Namely, that Frederick was recently divorced, a single mother with two minor children living in the residence and that Plaintiff was involved in a fledgling business venture and was in arrears in her mortgage

9

payments. (Compl. ¶84). There is no mention that she told them that she was also African-American. Although the complaint vaguely alleges that the Plaintiffs have been deprived of their rights "on account of race", (Compl. ¶¶ 23, 50), it is not plausible that based on the phone calls described by Frederick that Pierce knew her race, or intentionally sought to deny her the opportunity to participate in the Sherriff's foreclosure sale, because of her race. (Compl. ¶47). The facts alleged in the Complaint, the Frederick's affidavit and the transcribed phone message do not support the conclusion that Pierce deliberately singled out Frederick for disparate treatment, or treated her differently, from any other caller requesting information regarding a sale. Nor do they support the conclusion that Pierce had racial animus when it gave her the wrong information relating to the sale.

Finally, the allegations and exhibits conclusively establish that Frederick has not been deprived of her rights. The misinformation was sufficient to compel the state court to vacate the sale thereby removing any obstacle to her ability to "purchase, sell, hold" property. Therefore, Counts Three and Four fail to state a claim under 42 U.S.C. §1982 and must be dismissed.

### IV. PLAINTIFF'S STATE LAW CLAIMS FAIL TO STATE CAUSES OF ACTION.

#### A. COUNTS FIVE AND SIX FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP.

Plaintiffs assert that Pierce, *et. al.* tortiously interfered with her contractual relationship with Dixon under the Dixon contract (Count Five) and her contractual relationship with the investor (Count Six) regarding the foreclosure matter. Count Five fails because, again, Pierce's involvement with the Plaintiffs occurred after the Dixon contract expired and there is no allegation that Pierce was even aware of Frederick's relationship with Dixon. Count Six fails because there is no allegation that Pierce was aware of the Plaintiff's contractual relationship

with her investor. Both counts fail because the Complaint does not allege or support the inference that Pierce knew that Frederick had any contractual relationship with these people.

The elements of a *prima facie* tortious interference case are 1) the existence of a valid business relationship or expectancy; 2) knowledge of the relationship or expectancy on the part of the interferer; 3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted. The interest protected is the reasonable expectation of economic advantage. *City of Rock Falls v. Chicago Title & Trust Co.,* 13 Ill.App.3d 359, 300 N.E.2d 331 (3rd Dist. 1973).

The Plaintiffs have not stated a claim under this tort theory. First, they have not alleged that a valid contract or contractual relationship existed. In Count Five, the contractual relationship between Frederick and Dixon had already lapsed before Pierce filed the foreclosure. *See*, *Lusher v. Becker Bros., Inc.*, 155 Ill.App.3d 866, 869, 509 N.E.2d 444 (3rd Dist. 1987) (courts will not confer a claim of action for tortious interference with a contract against a third party without an enforceable contract). In Count Six, although the Plaintiffs conclude that they had business relationship with Mr. Dantuma, the investor, they allege no facts to support that conclusion. In fact, the allegations suggest merely that Dantuma was interested in bidding at sale but they do not support the inference that he was going to bid on the Plaintiffs' behalf, or that he was contractually bound to do so. There is nothing plead in Count Six to show what the nature of Plaintiff's relationship with Dantuma consisted of.

Perhaps the mortal flaw in the Plaintiffs' tortious interference claims, however, is their failure to allege that Pierce knew of the existence of these relationships. Nowhere in Counts Five or Six is there an allegation or inference of what Pierce knew in relation to Frederick's contract

with Dixon or her deal with the investor. Allegations of actual awareness of existing contracts are required. *Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.,* 2005 WL 3159680 (N.D.Ill.) (defendants knowledge of plaintiff's operations is not a sufficient allegation that defendants knew about the Plaintiff's existing business relationship); *Kraft Chem. Co. v. Ill. Bell Tel. Co.,* 240 Ill.App.3d 192, 608 N.E.2d 243, 247 (1992) (finding that plaintiffs failed to show that defendant landscapers, who severed an underground fiber optic cable and interrupted communications service, had specific knowledge of existing contracts for phone service between the proposed customer class and telephone company).

  **B.** **THERE IS NO RIGHT OF ACTION FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING UNDER THE MORTGAGE FORECLOSURE LAW. THEREFORE COUNTS SEVEN AND EIGHT MUST BE DISMISSED.**

In Count Seven and Eight Plaintiffs allege that the Illinois Mortgage Foreclosure Act ("IMFL") "imposes on the mortgagee a duty of good faith and fair dealing in the pursuit of foreclosure actions". Contrary to these assertions, there is no specific duty of good faith and fair dealing imposed under any section of IMFL. The duty of good faith and fair dealing is implied in contracts but its not a statutory construct. *See, Gore v. Indiana Insurance Co.,* 376 Ill.App.3d 282, 286, 876 N.E.2d 156, 161 (1st Dist 2007).

Plaintiffs' grievances are nothing more than a complaint that Pierce actively undermined the notice requirements for judicial sales conducted pursuant to IMFL by misinforming Fredrick that the sale had been continued. However, the IMFL provides a remedy when proper notice of the sale is not provided. It can, as the court did here, set aside the sale. 735 ILCS 5/15-1508. The IMFL does not recognize an independent cause of action for violating the conduct she complains of and no Illinois case has found an implied private right of action for this conduct either.

Instead, the court gave her all that she was entitled to under IMFL. As a result, both Counts must be dismissed for failure to state a cause of action.[4]

### C. COUNTS NINE AND TEN FAIL TO STATE A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

In Counts Nine and Ten, Plaintiffs purport to plead claims for Intentional Infliction of Emotional Distress. In Count Nine, the allegations stem from the Dixon contract and those in Count Ten from the foreclosure matter. These claims fail as well.

The statute of limitations in Illinois for a claim of Intentional Infliction of Emotional Distress (IIED) is two years. *Dahl v. Federal Land Bank Assn. of Western Illinois,* 213 Ill.App.3d 867, 872, 572 N.E.2d 311, 314 (Ill. 1991). Because the contract with Dixon expired in May of 2005, and the current action was not filed until December of 2007, Count Nine must be dismissed as to defendant Pierce.

Count Ten should be dismissed also because the conduct complained of is not severe enough to qualify as extreme and outrageous to be actionable under an IIED theory. In order to give rise to a cause of action for intentional infliction of emotional distress in Illinois a party must be able to prove:

> First the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."

*McGrath v. Fahey,* 126 Ill.2d, 78, 86, 533 N.E.2d 806, 809 (1988 *rehearing denied* 1989). *See Van Stan v. Fancy Colours & Co.,* 125 F.3d 563, 567 (7th Cir. 1997). "Conduct is extreme and outrageous only if the conduct has been so outrageous in character and so extreme in degree, as

---

[4] Moreover, the allegations in Count Seven predate the foreclosure thereby precluding any possible under the IMFL.

to go beyond all possible bounds of decency." *Id.* (collecting cases; internal quotation marks omitted). The stress inflicted must be "so severe that no reasonable man could be expected to endure it." *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks and citation omitted). Accordingly, for Defendants to be held liable, the conduct "must be such that the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!' " *Van Stan,* 125 F.3d at 567 (7th Cir. 1997). (internal quotation marks and citation omitted).

In Count Nine, the complained of behavior is merely that Pierce did not cooperate with Frederick and her broker in Frederick's attempts to sell the property. At best it is frustrating, not so severe that it is impossible to endure. The allegations falls woefully short of the "extreme and outrageous" behavior that courts have required be minimally plead to state a claim for IIED. *Cf., Frazier v. Board of Education of the City of Chicago,* 2033 WL 2150328 (N.D.Ill.) (allegations that the defendant harassed her, made false accusations, committing battery and even caused her to be falsely arrested did not state a cause of action for IIED and was dismissed under Rule 12(b)(6)); *Andrekus v. Bd. of Ed. of Dist. U-46,* 2003 WL 1475033 (N.D.Ill.) (allegations that the defendant assigned the plaintiff to menial jobs, soliciting students to spy on them, falsely accusing and disparaging them, failing to honor grievances, removing them from posts etc. were not sufficient to state a claim for *IIED); Rosas v. BB Holdings Partnership,* 362 F. Supp.2d 986 (S.D.Ill. 2005) (allegations that employer that he was harassed and intimidated against for filing workers compensation claim does not state a claim for IIED).

The conduct in these cases as well as a dozen or so other cases not mentioned here establish that the conduct has to be truly outrageous to qualify as actionable conduct under the IIED. It is not reasonable to infer that Pierce who is merely a conduit for information from the

14

lender could have intentionally elected to reduce the number of bidders at the judicial sale by providing misinformation as to when it was being held.  Nothing in the complaint indicates that the actions taken by Pierce were intentional, or what specific distress was caused by Pierce other than the stress experienced by all persons facing foreclosure. Moreover, Frederick in vacating the sale, and preventing the confirmation of the judicial sale has demonstrated that rather than being unable to endure the stress of foreclosure, she was able to act appropriately to protect her own interest under the law.   Counts Nine and Ten fail to state a cause of action and must be dismissed.

/s/ James V. Noonan
Attorney for Defendant, Pierce & Associates

James V. Noonan #6200366
Mitchell A. Lieberman #6193234
Jonathan D. Nusgart #6122908
Katherine M. Donat #6289386
Ruth B. Sosniak #6204497
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 3000
Chicago, Illinois 60603
312-431-1455