UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CALVITA J. FREDERICK ET AL | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 07 C 7044 |
| | ) | |
| SELECT PORTFOLIO SERVICING INC., | ) | Honorable Judge Manning |
| DLJ MORTGAGE CAPITAL, and | ) | Honorable Mag. Judge Valdez |
| PIERCE & ASSOCIATES, | ) | |
| | ) | Circuit Court of |
| Defendants. | ) | Cook County, Illinois |
| | | Case No. 07 L 12507 |

**DEFENDANTS DLJ MORTGAGE CAPITAL AND SELECT PORTFOLIO SERVICING INC.'s MOTIONS FOR JUDGMENT ON THE PLEADINGS.**

Defendants DLJ Mortgage Mortgage Capital ("DLJ") and Select Portfolio Servicing Inc. ("SPS") move this court for entry of judgment on the pleadings and, in support thereof, state as follows:

**I.   INTRODUCTION.**

Plaintiffs filed a rather prolix multi-count complaint. Defendants DLJ and SPS answered the complaint and raised a number of defenses, including the statute of limitations and failure to state any claim for which relief could be granted. More recently, Defendant Pierce & Associates ("Pierce") appeared and filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12 (b) (6) for failure to state any claim upon which relief can be granted ("Pierce's Motion").

On June 26, 2008, DLJ and SPS were granted leave to file motions for judgment on the pleadings. A combined briefing schedule with Pierce's Motion was set. DLJ, SPS and Pierce were directed to file consolidated briefs addressing common arguments to the extent possible, and were given leave to file supplemental individual briefs if necessary. Therefore, as

1

hereinafter stated, DLJ and SPS adopt portions of Pierce's Motion that address common arguments and otherwise move for judgment as follows:

## II. STANDARDS FOR MOTION FOR JUDGMENT ON THE PLEADINGS.

A party may move for judgment on the pleadings after the parties have a complaint and answer on file. Fed. R. Civ. P. 12 (c) & 12 (h) (2); *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir. 1991); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F. 3d 449, 452 (7th Cir. 1998). The standards are the same as for a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12 (b) (6). *Murray v. Household Bank N.A.* 386 F. Supp. 2d 993, 995 (N.D. Ill. 2005) citing *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997). A court will grant a motion where, based on the pleadings, exhibits, matters of public record and matters subject to judicial notice, it finds that plaintiff is unable establish their right to relief. *Id.* A court ruling on a motion for judgment may consider and rely upon the pleadings, including the complaint and answer, any written instruments attached as exhibits, matters of public record and matters incorporated by reference that may not be attached to the pleadings. *United States v. Wood,* 925 F.2d at 1581.

## III. BACKGROUND.

### A. Background taken from the pleadings and exhibits filed to date.

On November 5, 2007, Plaintiffs, Calvita Frederick ("Frederick"), Larry Sowell, Samantha Sowell and Simon Sowell ("Sowell Plaintiffs") (Frederick and the Sowell Plaintiffs are collectively referred to as "Plaintiffs"), commenced an action against the DLJ Mortgage Capital Inc., Select Portfolio Servicing Inc., and Pierce and Associates in the Circuit Court of Cook County, Illinois. (Compl.; Notice of Removal, Docket #1). Plaintiffs' action was removed because this Court has original jurisdiction over Counts I-IV of this action pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over the remaining Counts V-X pursuant to 28 U.S.C. §1367. (Notice of Removal, Docket # 1)

Plaintiffs allege Frederick is the owner of property commonly known as 4753 S. Dorchester, Chicago, Illinois ("Property"). (Compl. Ex. D, Affidavit of Calvita Frederick, ¶1). Plaintiffs allege the property has been the subject of two foreclosure proceedings, one predating the April 25, 2005 Dixon Contract (Compl. ¶15) and the second an action filed by DLJ in the Circuit Court of Cook County entitled *DLJ Mortgage Capital Inc. v. Calvita Frederick et al.,* 06 CH 2321 ("06 Foreclosure"). (Compl. ¶5) Plaintiffs name DLJ, the current holder of Frederick's Mortgage; SPS, servicing agent for DLJ; and Pierce; attorneys of record for DLJ in the 06 Foreclosure, as defendants. (Compl. ¶¶5-7).

In Counts I-IV, Plaintiffs conclude that defendants violated 42 U.S.C. §3605(a), the Fair Housing Act ("FHA"), by discriminating against them in a real estate-related transaction based on race. In these same counts, Plaintiffs conclude defendants also violated 42 U.S.C. §1982, The Civil Rights Act of 1866 ("CRA"), by denying Frederick the right to participate in the sale of her property based on her race. (Counts I-IV, Compl.) Plaintiffs also filed state law claims based on tortious interference (Counts V-VI); violations of the Illinois Mortgage Foreclosure Law, 735 ILCS § 5/15-1101 et seq., (Counts VII-VIII); and intentional infliction of emotional distress (Counts IX-X). As Pierce's Motion accurately describes, all of Plaintiffs' claims are based on two (2) events.

The first event relates to Frederick's alleged efforts in March and April 2005 to sell the Property, which was the subject of mortgage foreclosure proceedings initiated in the Circuit Court of Cook County. (Compl.¶15) Frederick claims that she entered into a contract with Thomasina Dixon ("Dixon") dated 3-25-05. (Compl. Ex. A ("Contract")). Frederick alleges each of the Defendants prevented her from completing the Contract by failing to provide payoff figures for her loan. (Compl. ¶14) Plaintiffs asserts that "Defendants refusal to cooperate with

3

the sale of the real estate to Thomasina Dixon was because it was a short sale" (¶ 16, Compl.)[1] Consistent with Pierce's Motion, this event and allegations concerning the event are referred to herein as the "Dixon Contract". (Compl., Pierce's Motion, pgs. 2-3).

The second event relates to a scheduled judicial sale of the Property in May 2007 pursuant to a judgment of foreclosure and sale entered against Frederick on February 6, 2007 in the 06 Foreclosure. (Compl. Ex. D ¶3; Compl. Ex. "E" Report of Sale and Distribution ("Report")). Plaintiffs allege Pierce misinformed Frederick that the sale set for May 10, 2007 was cancelled when it was not. Plaintiffs allege the sale went forward and DLJ was the successful bidder for $598,356.74. (Compl. ¶¶ 37-38). Plaintiffs conclude Pierce's alleged misinformation prevented a third party investor from either purchasing the property for himself or negotiating on Frederick's behalf. (¶¶ 45-46). Plaintiffs concede the sale was subsequently set aside at Frederick's request. (Compl. ¶40; Ex. G, Circuit Court Order). Consistent with Pierce's Motion, this event and allegations concerning the event are referred to as the "Foreclosure Matters".

**B. Supplemental background based on public record or matters subject to judicial notice.**

Plaintiffs refer to a foreclosure proceeding pending at the time of the Dixon Contract. (Compl. ¶15). It is a matter of public record and proper to consider that on August 13, 2004, prior to the Dixon Contract, a judgment of foreclosure and sale in the amount of $483,530.26 had been entered against Frederick in the action filed in the Circuit Court of Cook County, IL, 03 CH 13634 ("03 Foreclosure"). (Notice of Sale 03 CH 13634; Ex. 1 hereto) It is also a matter of public record that in that case the court had considered and denied Frederick's motion to compel

---

[1] A "short sale" refers to when secured creditor accepts less than the amount owed to satisfy its debt. . *In re Mi La Sul* 380 B.R. 546 .C.D. Cal., 2007.

4

DLJ to accept a lesser sum than the judgment. (Frederick Emergency Motion to Stay, Ex. 2, hereto; Order of November 12, 2004, Ex. 3, hereto)

In Illinois, pursuant to statute, interest on judgments accrues at a rate of nine percent (9%). (735 ILCS 5/2-1303). Accordingly, by April 25, 2005, accruing interest alone would have increased the August 13, 2004 judgment debt to $513,802.14[2].

§5/15-1603(b) of the Illinois Mortgage Foreclosure Law ("IMFL") provided that "the redemption period shall end on the later of (i) the date 7 months from the date the mortgagor, or if more than one, all mortgagors [have been served], or (ii) the date 3 months from the date of the entry of the judgment of a judgment of foreclosure." 735 ILCS §5/15-1603(b).

§5/15-1603 (d) of the IMFL provided that when allowed, the amount necessary to redeem was:

(1) The amount specified in the judgment of foreclosure, which shall consist of (i) all principal and accrued interest secured by the mortgage and due as of the date of the judgment, (ii) all costs allowed by law, (iii) costs and expenses approved by the court, (iv) to the extent provided for in the mortgage and approved by the court, additional costs, expenses and reasonable attorneys' fees incurred by the mortgagee, (v) all amounts paid pursuant to Section 15-1505 and (vi) per diem interest from the date of judgment to the date of redemption calculated at the mortgage rate of interest applicable as if no default had occurred; and

(2) The amount of other expenses authorized by the court which the mortgagee reasonably incurs between the date of judgment and the date of redemption, which shall be the amount certified by the mortgagee in accordance with subsection (e) of Section 15-1603
735 ILCS

---

[2] This figure was arrived at by: a) taking the judgment amount ($483,520.26) and multiplying by 9% interest to arrive at annual rate of interest ($43,516.82); 2) dividing the annual interest by 365 days to obtain a per diem interest figure ($119.22); 3) multiplying the per diem by 254, the number of days between August 13, 2004 (judgment date) and April 25, 2005 to arrive at accrued interest as of April 25, 2005 ($30,281.88); and 4) adding the amount of accrued interest to the judgment for an amount due as of April 25, 2005 based on interest alone. Other factors such as advances for taxes and insurance could have increased the debt as well.

## IV.   ARGUMENT.

A.   **Counts I-II are barred based on Statute of Limitations**

Plaintiffs complain that in April 2005 each of the Defendants violated the FHA and CRA by refusing to cooperate with Frederick's purported sale to Dixon. DLJ and SPS raised the statute of limitations as a defense. As Pierce's Motion correctly points out, the limitations periods for claims based on the FHA and CRA are two (2) years. DLJ and SPS adopt the arguments set forth in Pierce's Motion and move for judgment on the pleadings based on the statute of limitations.

B.   **DLJ and SPS are otherwise entitled to judgment on the pleadings as to the Dixon Contract because Plaintiffs cannot establish any claim upon which relief may be granted.**

   1.   **Plaintiffs cannot otherwise establish a claim for relief under the FHA.**

Plaintiffs contend that they were discriminated against when Defendants failed to cooperate to close the Dixon Contract. Plaintiffs' allegations in this regard, even if true, do not entitle Plaintiffs to any relief and DLJ and SPS are entitled to judgment.

Under the FHA it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction because…of race." 42 U.S.C. §3605 (a) The FHA defines residential real-estate transactions as "the making or purchasing of loans or providing other financial assistance for: a) purchasing, constructing, improving, repairing, or maintaining a dwelling or; b) secured by residential real estate." 42 U.S.C. § 3605(b) (2007).

In this case, Plaintiffs have not and cannot establish that Defendants were making a loan or providing financial assistance for the Plaintiffs purchasing, constructing, improving, repairing or maintaining a dwelling such that the FHA would or should apply. Instead, Plaintiffs allege

6

Frederick was trying to sell the Property that served as security for DLJ's judgment to a third party as a short sale, i.e. for an amount that was insufficient to pay the judgment debt. According to Plaintiffs, Defendants failed to provide a pay-off where the gross sales price was less than the amount necessary to pay the debt. These facts simply don't establish a real estate-related transaction or claim under the FHA

Moreover, to prevail on a claim under the FHA, a plaintiff must demonstrate race was a motivating consideration in the decision not to proceed with the real estate-related transaction. *Lattimore v. Citibank Savings Bank,* 979 F. Supp. 662, 664 (N.D. Ill. 1997) *aff'd* 151 F.3d 712 (7th Cir. 1998) In *Lattimore v. Citibank Savings Bank*, the Seventh Circuit rejected the *prima facia* burden shifting standard articulated in *McDonnell Douglas Corp. v Green* 411 U.S. 792, the standard Plaintiff relies upon, for determining whether a viable claim for discrimination exists under the FHA. *Lattimore v. Citibank Savings Bank,* 151 F.3d at 714-715. The court found that in this context, before a defendant should be put to the burden of producing evidence, a plaintiff must be able to show facts which if true would demonstrate a triable issue of discrimination. *Lattimore v. Citibank Savings Bank* 151 F.3d 712, 714-715.

In this case, rather than allege facts that demonstrate race was a motivating consideration or factor for Defendants' behavior, Plaintiffs affirmatively allege that Defendants did not "cooperate with the sale of the real estate to Thomasina Dixon was because it was a short sale" (Compl.¶16). In other words, Plaintiffs allege Defendants didn't facilitate a sale which would not pay their judgment. Further as established by the pleadings, exhibits and matters of public record, as of April 25, 2005 the redemption period had expired. As of April 25, 2005 the amount due on Frederick's judgment debt was an amount well in excess of the gross sales price set forth in the Contract. (Ex. 1, Notice of Sale) Further, the putative contract required payment of a 6% commission and tax pro-rations that would necessarily reduce any net proceeds from sale.

7

(Compl. Ex. A) Accepting Plaintiffs allegations, Defendants were not interested in a short sale to a third party that would generate an amount far less than the amount of its judgment debt. As reflected in the public court record, the state court rejected Frederick's efforts to compel such a result. All of these facts fall far short of demonstrating any triable issue of discrimination and instead demonstrate that DLJ and SPS are entitled to judgment.

### 2. Plaintiffs cannot state a claim for relief based on the CRA.

Pierce's Motion correctly points out that for a claim under the CRA, a plaintiff must establish with specificity, the defendants racial animus; intentional discrimination; and that defendants deprived plaintiff of his rights to sell because of race. *Brown v. Philip Morris, Inc.*, 250 F.3d. 789, 797 (3d Cir. 2001)  Pierce's Motion identifies several shortcomings with Plaintiff's Complaint as it relates to a CRA claim based on the Foreclosure Matters and these reasons are applicable to the Dixon Contract as well.  DLJ and SPS adopt those arguments.

In addition, Plaintiffs' own allegations taken as true demonstrate that DLJ and SPS acted for reasons other than race and are entitled to judgment. Although as a general proposition Frederick may have a right to sell her property she did not have the right to sell the Property without regard to the debt secured by that Property. In fact, as noted: the state court had rejected her efforts in that regard; pursuant to the IMFL the redemption period had expired; and even if Plaintiff were still able to redeem, the amounts necessary to redeem the August 13, 2004 judgment would have exceeded the sales proceeds from the Dixon Contract.  Based on the pleadings, exhibits and matters of public record, Plaintiffs have not and cannot state a claim under the CRA.

**C.    DLJ and SPS are entitled to judgment on the pleadings as to Counts III and IV for failure to state any claim for relief against DLJ or SPS based on the Foreclosure Matters.**

8

DLJ and SPS adopt the arguments raised by Pierce as to whether the Foreclosure Matters give rise to any claim for which relief may be granted against any defendants under either the FHA or CRA. In addition to those arguments, it's otherwise clear Plaintiffs have not and cannot establish any claim against DLJ and SPS based on the Foreclosure Matters.

Counts III and IV are based exclusively on allegations that touch upon alleged interactions between Pierce and Frederick. Specifically, Plaintiffs allege that: a) a sheriff's sale of her property was scheduled for May 10, 2007; b) Frederick made several calls to Pierce for purposes of obtaining information about the opening bid; c) Frederick was informed by a message left by Pierce that the sale had been postponed; d) the sale was not postponed; and e) that DLJ made a successful full debt bid at sale. (Compl. ¶¶34-38; Compl. Ex. E Report.) In addition, Plaintiffs attach various pleadings in the state court foreclosure proceeding including Frederick's affidavit wherein she states that all of her communications were with Pierce and Pierce's response to Frederick's motion to "dis-affirm" sale wherein they state that they never received a direction in this regard from DLJ or SPS. (Compl. Ex D, Affidavit; that part of Ex. G titled "Plaintiffs Responses To Defendant's Motion to Dis-Affirm Sale") Plaintiffs have not and cannot allege that race was a motivating factor or the factor for DLJ or SPS for reasons that include Plaintiffs can't even demonstrate DLJ or SPS were aware of or involved with the interactions between Pierce and Plaintiff.

**D.** **DLJ and SPS are entitled to judgment on the pleadings as to Counts V and VI for failure to state any claim upon which relief may be granted based on tortious interference with business relationships.**

In Counts V and VI Frederick conclude that all Defendants tortiously interfered with Frederick's contractual relationship with Dixon and her business expectancy regarding the

9

Foreclosure matter. Frederick has not and cannot state a claim for relief against DLJ or SPS as to either event and DLJ and SPS are entitled to judgment as a matter of law.

### 1. Plaintiffs cannot state claim for tortious interference with Dixon Contract.

To succeed on a claim for tortious interference with contractual rights, plaintiff must plead and prove the following elements: the existence of a valid and enforceable contract between the plaintiff and another; the defendant's awareness of this contractual relation; the defendant's intentional and unjustified inducement of a breach of the contract; a subsequent breach by the other, caused by the defendant's wrongful conduct; and damages. *Douglas Theater Corp. v. Chicago Title & Trust Co*. 288 Ill.App.3d 880, 883, 681 N.E.2d 564 (1st. Dist., 1997) Plaintiffs have not and cannot allege an intentional and unjustified interference with the Dixon contract.

Frederick herself alleges that the reason defendants acted the way they did was because the Dixon Contract represented a short sale. As noted herein, Frederick cannot establish that DLJ and SPS were required to accept less than what was due and therefore Frederick cannot demonstrate that a refusal to complete a short sale contract would not give rise to a claim intentional and unjustified interference with the Dixon Contract.

Moreover, Frederick cannot demonstrate any damage as a result of any alleged interference since by her own allegations the gross sales price was less than what she owed DLJ. In other words, Frederick cannot allege an actual or expected financial gain where, by her own allegations, the sale would not have generated sufficient funds to pay-off her debt let alone provide here with a financial gain.

### 2. Plaintiffs cannot state a claim for tortuous interference based on Foreclosure Matters.

As far as the Foreclosure Matters, DLJ and SPS adopt Pierce's Motion as it relates to Frederick's inability to demonstrate a valid contract or expectancy or DJL or SPS's knowledge of the contract or expectancy. Frederick own allegations and exhibits to her complaint demonstrate that DLJ and SPS had nothing to do with the circumstances that Frederick claims give rise to her claim. Frederick did not speak with DLJ or SPS and according to Pierce, DLJ and SPS did not direct Pierce in this regard. Finally, Frederick has not and cannot allege any damage as a result of the purported interference. According to Frederick's own allegations and the exhibits attached to her complaint, the subject sale was vacated on her motion.

**E.    There is no right of action for breach of duty of good faith and fair dealing and DLJ and SPS are entitled to judgment on the pleadings as to Counts VII and VIII.**

As Pierce's Motion accurately points out, there is no duty of good faith and fair dealing imposed by the IMFL and DLJ and SPS adopt the arguments and authorities contained in Pierce's Motion. In addition, although a duty of good faith and fair dealing is implied in contracts in Illinois that implied duty does not form the basis of an independent tort. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill.App.3d 355, 366, 657 N.E.2d 1095 (1st. Dist. 1995)  DLJ and SPS are entitled to judgment.

**F.    Frederick has not and cannot state a claim for intentional infliction of emotional distress and DLJ and SPS are entitled to judgment on the pleadings.**

DLJ and SPS adopt the arguments and legal authority raised by Pierce for and in support of their motions for judgment as to both Counts IX and X. In addition DLJ and SPS offer as follows:

> **1.    DLJ and SPS are otherwise entitled to judgment on the pleadings as to Count IX which is based on the Dixon Contract.**

Based on Plaintiffs' own allegations and the facts gleaned from the public record,

11

it's clear Plaintiffs cannot state any claim for intentional infliction of emotional distress.  By there own allegations, Plaintiffs state that Defendants acted as they did because it was a short sale.  Further, as pointed out herein, Frederick's right to redeem had expired and even if it had not, the amounts necessary to redeem would have exceeded the sales proceeds.  Finally, as previously demonstrated, the state court had considered and denied Frederick's efforts to force a short sale.  It is hardly extreme or outrageous for a lender to act in a manner consistent with its rights to seek full payment of its debt; the IMFL; and the foreclosure court's decisions.

**2.     DLJ and SPS are otherwise entitled to judgment on the pleadings as to Count X which is based on the Foreclosure Matters.**

All of Plaintiffs allegations refer to conduct of Pierce.  There are no facts to suggest DLJ or SPS were aware of the events upon which Plaintiffs bring this claim.   Indeed, according to Frederick's affidavit and Pierce's response in the state court, DLJ and SPS were not aware of the events which gave rise to the Foreclosure matter.  Clearly DLJ and SPS are entitled to judgment.

Respectfully submitted,

SELECT PORTFOLIO SERVICING, INC. and
DLJ MORTGAGE CAPITAL


By:  _s/Michael J. Weik_____
        One of Defendants' Attorneys

Michael J. Weik ARDC # 3125782
Craig C. Smith   ARDC #6238126
Smith & Weik LLC
19 S. LaSalle Street, Suite 601
Chicago, IL 60603
312-895-4560