

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
J.N AUG 1 4 2008
Aug 14, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| CALVITA J. FREDERICK, ET AL ) | |
| ) | 07C 7044 |
| Plaintiffs, ) | Honorable Judge Manning |
| ) | Honorable Mag Judge Valdez |
| vs. ) | |
| ) | |
| DLJ MORTGAGE CAPITAL, INC, SELECT ) | Circuit Court of |
| PORTFOLIO SERVICING, INC., PIERCE ) | Cook County, Illinois |
| AND ASSOCIATES, AND UNKNOWN ) | Case No. 07 L 12507 |
| Defendants. ) | |

## NOTICE OF FILING

To:     Michael J. Weik           Ruth Sosniak
        Smith & Weik             James V. Noonan
        10 S. LaSalle Street       Michael A. Lieberman
        Suite 3702                 105 W. Adams, Suite 3000
        Chicago, IL. 60603       Chicago, IL. 60603

Please take notice that on August 14, 2008 I caused to be filed the within **RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS COMPLAINT AND TO RE-SET THE BRIEFING SCHEDULE.**

_____
Plaintiff's Attorney
Calvita J. Frederick-Sowell
ARDC # 06184001
4753 S. Dorchester Ave.
Chicago, Illinois 60615
(312) 421-5544

## PROOF OF SERVICE

The undersigned certifies, deposes and says upon oath that on Aug. 14, 2008 the undersigned served the above Notice, together with true and accurate copies of the above stated instruments upon the above named parties by regular mail to Ruth Sosniak and Michael J. Weik at the above addresses with postage prepaid.

Plaintiff's Attorney
Calvita J. Frederick-Sowell
ARDC # 06184001
4753 S. Dorchester Ave.
Chicago, Illinois 60615
(312) 421-5544



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED AUG 14 2008 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| CALVITA J. FREDERICK, ET AL ) | |
| ) | 07C 7044 |
| **Plaintiffs,** ) | Honorable Judge Manning |
| ) | Honorable Mag Judge Valdez |
| vs. ) | |
| ) | |
| DLJ MORTGAGE CAPITAL, INC, SELECT ) | Circuit Court of |
| PORTFOLIO SERVICING, INC., PIERCE ) | Cook County, Illinois |
| AND ASSOCIATES, AND UNKNOWN ) | Case No. 07 L 12507 |
| **Defendants.** ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS DLJ MORTGAGE CAPITAL AND SELECT PORTFOLIO SERVICING INC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT PIERCE AND ASSOCIATES' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

PLAINTIFFS, Calvita J. Frederick, et al, ("Frederick") through their counsel, files this combined response to Defendants DLJ Mortgage Capital ("DLJ") and Select Portfolio Servicing Inc's "SPS") Motion for Judgment on the Pleadings and Defendant Pierce and Associates' ("Pierce") Motion to Dismiss Plaintiffs' Complaint as follows:

## I. INTRODUCTION

Plaintiffs have brought a multi count complaint alleging violations of the Fair Housing Act, 42 U.S.C. Section 3605 (a) ("FHA") and 42 U.S.C. 1982, The Civil Rights Act ("CRA"). Plaintiffs' allegations are based upon a 2005 Contract for the Sale of Real Estate for property

located at 4753 S. Dorchester Ave. Chicago, Illinois (the Property") entered into by Plaintiff Frederick and Thomasina Dixon ("Dixon Contract") which sale was blocked by Defendants' refusal to timely provide a Pay-off Statement and other closing documents. In addition, Plaintiffs' claims are also based upon incidents surrounding a 2007 Foreclosure Sheriff's Sale which Plaintiff Frederick and her investor were precluded from attending because of erroneous information as to the rescheduling of said sale provided by Defendants.

Defendants DJS and SPS and Pierce have filed a Motion for Judgment on the Pleadings and Motion to Dismiss, respectively. By order of this Court, the parties have been directed to file consolidated pleadings to the extent possible. Many of the points and arguments that Defendants rely upon in their respective pleadings are the same or similar. Plaintiffs will therefore file one Response to deal with the issues raised by both of the motions filed by the Defendants.

## II. STANDARDS OF REVIEW FOR MOTIONS FOR JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS

Defendants DJS and SPS have filed a Motion for Judgment on the Pleadings and Pierce has filed a Motion to Dismiss pursuant to Fed. R Civ. P. 12 (b) (6) The standard for both motions is the same.

The Federal Rules of Civil Procedure, under Rule 12 (b) (6) provides that the Court may dismiss a complaint when that Complaint fails to state a claim upon which relief can be granted. In reviewing the motion to dismiss, the Court may only examine the pleadings. In addition, the Court is required to construe the pleadings broadly, accepting all facts pleaded as true and

reviewing all information in the light most favorable to the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 84 S. Ct. 1733, 1733, 12 L.Ed. 2d 1030 (1964).

Therefore, a motion to dismiss will be granted only if "it appears beyond doubt that the non-movant can prove no set of facts in support of his claim that would entitle him to relief." *Conley v Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L.Ed. 2d 80 (1957)

### III. BACKGROUND

On November 5, 2007, Plaintiff Frederick filed a 10-count complaint against Defendants DLJ, SPS and Pierce. Three other Plaintiffs included in the lawsuit are Plaintiff Frederick's former spouse, Larry and the two minor children Samantha and Simone of Frederick and Larry. Plaintiff Frederick is the sole owner of the Property and was thereby the only Plaintiff involved in both the Dixon contract and the Foreclosure Proceeding. Nevertheless Plaintiff's Larry, Samantha and Simone suffered injury as a result of the conduct of Defendants.

Counts I and II set forth facts related to Plaintiff Frederick efforts to resolve a pending foreclosure action by the sale of the Property to Thomasina Dixon which was subject to a mortgage held by DLJ and SPS. In her efforts to complete the sale, Plaintiff Frederick, her attorney and others on behalf of the Dixon contract requested a Pay-Off Statement from DLJ and SPS. The Pay-off letter was not tendered until August 23, 2007, with calculations totaled through 08/10/07 and good through September 6, 2007. The Pay-off Statement detailed amounts for the principal balance, escrow advance, accumulated late charges, interest amounts and change dates, penalty interest and a total amount to Pay-off the loan of $468,609.37.

3

Counts III and IV of the Complaint allege violations of the FHA and CRA as relates to a Foreclosure Sale scheduled for May 10, 2007 and Pierce's misinforming Plaintiff Frederick that said sale was postponed. Plaintiff Frederick alleges in the complaint that an agreement was entered into with Scott Datuma, an investor, wherein Datuma would attend the Foreclosure sale and bid on the property on behalf of Frederick. Frederick and Datuma had an agreement that if the successful bidder, Datuma would hold the property for 1 year, while Plaintiffs continued to reside therein. At the end of the year, Datuma would sell the property back to Frederick for the bid amount plus a fee. Frederick relied upon information from Pierce that the Foreclosure sale was postponed, when in fact the sale proceeded as previously scheduled. The property was sold to DLJ for $598,356.74. Frederick brought a motion to set aside the sale as improper in the Circuit Court of Cook County, which motion was granted.

Counts V and VI are based upon a claim of tortuous interference with a business relationship based upon the Dixon contract and the Foreclosure proceeding respectively.

Counts VII and VIII allege violations of the Mortgage Foreclosure Act and are also based upon the Dixon contract and the Foreclosure proceeding, respectively.

Counts IX and X allege intentional infliction of emotional distress and are likewise based upon the Dixon contract and the Foreclosure proceeding, respectively.

## IV. ARGUMENT

**A. Counts I and II, actions relating to the Dixon contract, are not time barred because Defendants' failure to produce the Pay-Off Statement as requested in 2005 tolled the Statute of Limitations.**

Plaintiffs claims alleged in Count I and Count II of the Complaint arise under the FHA and CRA, two federal statues. Both the motion brought by Pierce and DLJ and SPS argue that

4

Counts I and II must be dismissed as they are time barred. Defendants contend that the applicable statute of limitations for violations of the FHA is 2 years as per the statute and 2 years for the CRA as per construction pursuant to the most closely analogous state statute. Plaintiff agrees that the applicable statue of limitations for both statues is two years but disagrees with Defendants conclusion that Counts I and II are time barred.

Tolling may either temporarily suspend the running of a statute of limitations period or delay the start of the statute of limitations period. *Ortega v. Pajaro Valley United School Dist.* 64 Cal. App. 4th 1023, 75 Cal Rptr. 2d. 777, (1999) The doctrine of equitable tolling is read into every federal statute of limitations unless Congress provides to the contrary in clear and unambiguous language. *Diaz v Antilles Conversion & Export, Inc.* 62 F. Supp. 2d 463 (1999), or unless such tolling would be inconsistent with the legislative purpose. *Iwanowa v Ford Motor Co.*, 67 F. Supp 2d (1999). No such language can be found in the FHA and the CRA is silent on the issue of the Statute of Limitations.

Equitable tolling is applicable to time requirements in lawsuits between private parties when necessary to prevent unfairness to a diligent plaintiff. *Iwanowa* at ___ When the doctrine of equitable tolling is applied, the limitation period is deemed interrupted. When the tolling condition or event is ended, the claimant is allowed the remainder of the limitation period in which to file the action. FNB Mort. Corp. v. Pacific General group, 76 Cal. App. 4th 1116, 90 ca. Rptr. 2d 841 (3d Dist. 1999)

The Illinois Courts have applied the doctrine of equitable tolling in a case where Plaintiff filed a cause of action under the Consumer Fraud Act. The Court held that a cause of action accrues when a Plaintiff knows or reasonably should have known of his injury and also knows or

5

reasonably should have known it was wrongfully caused. *Knox College* v *Celotex Corp.* 88 Ill. 2d 407, 415, 58 Ill. Dec. 725, 729, 430 NE 2d 976, 980 (Ill. 1981)

Plaintiff herein entered into a contract for the sale of the Property, which was subject to a mortgage, held by Defendants DLJ and SPS. In order to complete the sale of the property Plaintiff needed to know how much was owed and repeatedly requested the information from DLJ and SPS in the ordinary course of business. Whether Plaintiff had a contract for sale or not, she was entitled to request and receive a Pay-Off statement from the Defendants and to refuse to provide the requested Pay-Off for more than two years was unfair.

In addition, Plaintiff Frederick was lead to believe that the Pay-Off statement was not tendered as requested because the Dixon Contract was for an amount insufficient to pay off the existing mortgage and therefore amounted to a short sale, which DLJ and SPS would not approve. Upon receipt of the Pay-Off statement in 2007, it appears that the Dixon contract if completed in 2005, may not have been a short sale but may well have been sufficient to pay off the existing mortgage amount owed at that time and generate a profit to Plaintiff.[1]

Once the Pay off statement was received, Plaintiff became aware that reasons given for blocking the Dixon contract were in fact pretextual and that Plaintiff had a claim against DLJ and SPS. In accordance with the principles of equitable tolling the statute of limitations must be tolled during the time that DLJ and SPS refused to provide the Pay-off statement.

---

[1] The Pay Off statement tendered in August of 2007 listed interest amounts and interest rate change dates for various months in 2006 and 2007, as well as escrow advances. The total amount to payoff as of September 6, 2007 was shown to be $468,609.37. It appears that the average monthly interest rate is approximately $2000. If the property had been sold in March of 2005 interest charges for all of 2006 and nine months of 2005 and 2007 would have to be deducted from the amount to payoff. In addition if the monthly real estate tax escrow amount is approximately $1030 per month, approximately 30 months of real estate taxes or $31,000 would also have to be deducted from the payoff. In approximate figures the amount to payoff in March of 2005 should have been approx $377,609 and therefore a contract with a sale price of $490,000 -$500,000 would not have been a short sale, and would have generated a profit to Plaintiff.

Moreover, even if the Dixon contract appeared to set up a short sale, Plaintiff was entitled to receive a Pay off statement upon her request. No valid reason is given by DLJ and SPS, nor can a valid reason be given for DLJ and SPS's failure to provide the payoff statement so that Plaintiff could complete the Dixon contract. Defendant's failure to provide the Pay-off information to Plaintiff was clearly unfair and must therefore toll the statute of limitations.

Nowhere in Defendant's motions or pleadings does either of them allege that Plaintiff did not have the right to sell the property. Rather Pierce's motion clearly states Plaintiff had a right to sell the property in 2005, subject to the existing mortgage held by defendants DLJ and SPS. In addition, Pierce further editorializes in their motion that Frederick now (a similar point in time to the 2005 Dixon contract, when a Foreclosure Judgment has been entered against the Property, but before the Foreclosure sale takes place) has a Pay-off and is free to sell the property if she wishes.

Further even if the Dixon contract represented a short sale, Defendants do not anywhere allege that it does not approve short sales in the regular course of its business. Upon information and belief, Plaintiff Frederick believes that DLJ and SPS do approve certain short sales for people similarly situated to Plaintiff. Why Defendants refused to approve Plaintiff Frederick's purported short sale gives rise to the inference that it was for reasons beyond the numbers, which brings up another issue: the inconsistency of the numbers given by Defendants as to amounts owed on the mortgage. This point will be discussed more fully later.

The principles of equitable tolling require that "a plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information". *Cada* v. *Baxter Healthcare Corporation*, 920 F. 2d 446, 453 (Ill. 1990) Plaintiff Frederick complied with this

7

requirement by filing her complaint within three months of discovering the information that she had a claim against the Defendants.

### B. Plaintiff has established a claim for relief under the FHA and the CRA

Plaintiff Frederick brings this action pursuant to the FHA which provides " it is unlawful for any person or other entity whose business includes engaging in residential real estate transactions to discriminate against any person in making available such a transaction, because of race, color, religion, sex, handicap, family status or national origin." 42 U.S.C. 3605 (a).

Plaintiff also brings this action under the CRA, which guarantees all citizens equal right to hold and convey property. 42 U.S.C. Section 1982.

To state a claim under Section 3605 of the FHA, a claimant must plead (1) he is a member of a protected class; (2) he attempted to engage in a real estate related transaction and met all relevant qualifications for doing so; (3) the Defendant refused to engage in the transaction despite Plaintiff's qualifications and (4) Defendant continued to engage in that type of transaction with other parties with qualifications similar to Plaintiffs. *Hickson v Home Federal of Atlanta,* 805 F. Supp. 1567, 1571 (ND Ga, 1992)

In *Hickson,* the Plaintiff, an African American male brought an action against Homebanc which asserted violation of the FHA in Homebanc's refusal to accept Hickson's offer of a deed in lieu of foreclosure, Id at 15__. Defendant's Motion to Dismiss in *Hickson* was granted because Plaintiff failed to make certain necessary allegations. However the court in the *Hickson* case sets forth the standard for using the FHA to attack a banks failure to cooperate with a real estate related transaction proffered to dispose of a pending foreclosure action.

Plaintiff Frederick sought to sell the Property, which was subject to a mortgage held by Defendant's DLJ and SPS. Frederick's sale was part of her effort to resolve a pending action in

8

foreclosure against the Property and came at a time when she had authority to sell the property. Defendant's blocked the sale by refusing numerous requests by Frederick and her attorney to provide a Pay-Off statement showing the amount necessary to pay off the mortgage, and sell the property.

Plaintiff herein has made the required allegations in her complaint, as set forth in *Hickson*: i.e., (1) she is an African American and a member of a protected class (Complaint, par 11); (2) that she attempted to engage in a real estate related transaction, the Dixon Contract (Complaint, Par 12) (3) that Defendant's DLJ, SPS and Pierce refused to engage in the transaction by failing and refusing to provide the necessary Pay-Off statement (Complaint, Par 14-15); that Defendant's continue to engage in that type of transaction with other parties with qualifications similar to Plaintiff, i.e. upon information and belief Defendants provide pay-Off statements to other mortgagees for full price and short sales (Complaint Par 16)

In addition, 42 U.S.C. Section 3617, provides in pertinent part: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605 or 3606 of this title."

Although Plaintiff Frederick did not specifically mention Section 3617 in her complaint, her pleadings meet the standards and requirements of Section 3617. Those requirements are (1) Plaintiff possessed the requisite qualifications for the sale she wished to make: i.e. she had a valid contract with a ready willing and able buyer (Complaint par 12-13) (2) Defendants" treated similarly qualified persons differently (Complaint Par 16 and (3) Defendant's interfered with similar transaction that Plaintiff attempted to engage in with other parties, i.e. the Foreclosure transactions with Datuma (Complaint Par 32-50)

9

### C. Plaintiff has stated a cause of Action for Intentional Infliction of Emotional Distress

Defendants have moved this Court to dismiss Counts IX and X for several reasons. First, as to the Dixon Contract, Defendants allege that the action is time barred. Plaintiff believes the doctrine of equitable tolling, more fully discussed above, operates to preserve her claim for violation of the FHA, CRA and therefore the claim for Intentional Infliction of Emotional Distress as well.

The standard for determining whether or not there is a cause of action for intentional infliction of emotional distress is to examine whether or not the potential plaintiff has experienced severe or extreme emotional distress as a result of intentional or reckless extreme and outrageous conduct.. *Doe* v *Calumet City*, 161 2d 374, 641 N.E. 2d 498, 204 Ill. Dec. 274 (1994). A relevant factor in determining whether conduct is extreme or outrageous is the defendant's awareness that the plaintiff is particularly susceptible to emotional distress; whether a particular incident would produce fear in the person of ordinary sensibilities; and the intensity and duration of the stress brought on by Defendants conduct. *Doe*, supra

Several courts, including court in Illinois have recognized a claim for Intentional Infliction of Emotional Distress as a viable component in an action alleging violation of the FHA. 32 *The John Marshall Law Review* 29, 32. (1992)

In *Phillips* v *Hunter Trails Community Association,* the court found the Defendant's refusal to close on the sale of a house to the Phillips where a contract and deposit had been accepted and a closing date set, was motivated by the race of the Phillips family. Having sold their previous home, the *Phillips* were forced to live life as nomads for nearly a month. The court in *Phillips* found the Defendant's conduct to be so egregious that they order actual

expenditures, $100,000 in punitive and an additional $10,000 per family member for emotional distress.

Plaintiff Frederick was entitled to sell the Property and but for the violations of the FHA and CRA by the Defendants in their failure to provide a Pay-Off and cooperate with the sale would have done so. Plaintiff also suffered because of the inconsistencies in amounts Defendants demanded for payment of the outstanding mortgage. Defendant's behavior is so egregious in that it forced Plaintiff to remain in a downward spiral of foreclosure and Bankruptcy or accept the Foreclosure Judgment and walk away from her home.

Plaintiff Frederick was particularly sensitive to the on-going court proceedings because she is a member of the Illinois Bar and has for many years practiced law in this jurisdiction. Plaintiff has been embarrassed and humiliated by these ongoing legal battles over her home. In addition Plaintiff Frederick has been stressed over the potential outcome of this situation, and possible eviction of herself and her minor children at a time when she has limited resources. Plaintiff Frederick is upset that equity that she believed she had in the property in 2005, which would have allowed her to move on and provide for herself and her minor children, is now gone.

That although Frederick has not discussed the details of the foreclosure with her children that they are aware that there are issues about their home that they don't understand but that they may have to move. Further the children were born in the home and have attended school directly across the street and are stressed to think of moving. That Plaintiff's children have endured the stress of the divorce of their parents and have for the last 5 years lived with stress of knowing their father works in a dangerous place.

Plaintiff Frederick believes DLJ and SPS are aware of many of her concerns as they were detailed in hardship and forbearance request she submitted to Defendants on several occasions.

11

And to have every effort to get out from under the mortgage debt blocked by defendants caused Plaintiff to have to seek counsel for herself and her family.

### D. Plaintiffs have established discrimination based on race

Under the CRA, race is an impermissible factor in housing. *Smith v. Anchor Bldg. Corp.* 536 F. 2d 231 (1976). In *Smith* a black rental applicant met the objective requirements of the landlord, and rental would likely have been consummated had he or she been white, the court found that a prima facie inference of discrimination arises as a matter of law, and if that inference is not satisfactorily explained away, discrimination is established. *Id.* At 233.

In the instant case, Plaintiff entered into a contract for the sale of real estate For no logical reason, Defendants refused to provide Plaintiff with a Pay-off statement, which prevented the sale of the Property and kept Plaintiff in involved in foreclosure proceedings. Plaintiff believes the sale would have been allowed if she were a white person and that an inference of discrimination must arise as a matter of law. Defendants have offered no explanation as to why the requested Pay-off was not tendered. Plaintiff believes discrimination is established.

The standard in reviewing complaints charging racial discrimination in housing, requires the courts to look beyond the form of the housing transaction and proscribe practices which actually result in racial discrimination; effect, not motive is the touchstone because thoughtless housing practice can be as unfair to minority rights as a willful scheme. Smith v Anchor Building Corporation, 526 F 2d, 231 (1976).

Plaintiff herein believes she has been subjected to like discrimination as described in Smith Plaintiff believes that the constantly changing amounts due on the mortgage herein (August 2004 Judgment for $513,802.14, May 2007 Sheriff's Sale in the amount of $598,356.74,

and August 2007, Pay off Statement for $468,609.37) coupled with Defendant's blocking Plaintiffs attempts to sale and failure to provide requested Pay off documents gives rise to an inference of discrimination. Defendants have offered no explanation as to the variance in the claimed amounts due, or why they refused to provide a Pay Off in 2005.

Defendants additionally argue that they had no knowledge that Plaintiff Frederick was an African American. Plaintiff disagrees. Plaintiff is an attorney and has practiced law in this jurisdiction for more than 25 years. As an African American female, particularly in the 1980's and 1990's she was one of a very small group of African American female lawyers. For a number of years Plaintiff Frederick handled volume Bankruptcy cases in the same courts where Pierce and Associate practiced. In addition, Frederick has been involved in other matters involving the Pierce law firm.

As relates to DLJ and SPS knowledge of Plaintiff Frederick's race, upon information and belief thinks that race is a question on certain mortgage documents. Further race may be determined, with 80-90% accuracy rate, in many instances by zip code and location of the Property.

**E. Plaintiff has established a claim bases on Tortious Interference with a Business Relationship with the Dixon Contract and the Foreclosure Matter**

Wherefore, Plaintiff Calvita J. Frederick respectfully request that this Honorable Court:

A. Find that Plaintiff has set forth facts that support her claims and that entitle her to relief;

13

B. Deny Defendants' Motions for Judgment on the Pleadings and Motion to Dismiss.

C. Grant Plaintiff leave to amend her Complaint if necessary; and

D. Grant other and further relief as this Court deems just and proper.

Respectfully submitted,

By: _____ Plaintiffs' Attorney

Calvita J. Frederick-Sowell
ARDC # 06184001
4753 S. Dorchester Ave.
Chicago, Illinois 60615
(312) 421-5544

14