UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALVITA J. FREDERICK ET AL | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 07 C 7044 |
| | ) |
| SELECT PORTFOLIO SERVICING INC., | ) Honorable Judge Manning |
| DLJ MORTGAGE CAPITAL, and | ) Honorable Mag. Judge Valdez |
| PIERCE & ASSOCIATES, | ) |
| | ) Circuit Court of |
| Defendants. | ) Cook County, Illinois |
| | Case No. 07 L 12507 |

### SUPPLEMENTAL REPLY OF DEFENDANTS DLJ MORTGAGE CAPITAL AND SELECT PORTFOLIO SERVICING INC. TO PLAINTIFFS' RESPONSE TO DEFENDANT DLJ MORTGAGE CAPITAL AND SELECT PORTFOLIIO SERVICING INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS.

Defendants DLJ Mortgage Mortgage Capital ("DLJ") and Select Portfolio Servicing Inc. ("SPS") (collectively "DLJ/SPS"), for their supplemental reply to Plaintiffs' Response To Defendant DLJ Mortgage Capital and Select Portfolio Servicing Inc.'s Motion for Judgment on the Pleadings and Defendant Pierce and Associates' Motion to Dismiss Plaintiffs' Complaint ("Plaintiffs' Response"), state as follows:

### I.   BACKGROUND.

Defendant Pierce and Associates ("Pierce") filed a Motion to Dismiss Plaintiffs' Complaint ("Pierce's Motion"). DLJ and SPS were thereafter granted leave to file motions for judgment on the pleadings ("DLJ/SPS's Motion). Pierce and DLJ/SPS were asked to file consolidated briefs addressing common arguments to the extent possible and supplemental individual briefs if necessary. Accordingly, DLJ/SPS adopted various portions of Pierce's

1

Motion that addressed common arguments and otherwise moved for judgment based on supplemental arguments.

Plaintiffs have filed a combined response to the motions filed by Pierce and DLJ/SPS. DLJ/SPS and Pierce have filed a Joint Reply. For their supplemental reply, DLJ/SPS offer as follows:

## II.   INTRODUCTION.

Plaintiffs' Response does not contest certain issues and/or arguments raised by DLJ/SPS's motion for judgment on the pleadings. These uncontested or uncontroverted matters are as follows:

**A.   DLJ/SPS and Pierce's motions regarding Counts V, VI, VII and VIII have not been contested or controverted .**

See Joint Reply.

**B.   Plaintiffs do not dispute that DLJ/SPS had nothing to do with the events which they claim gave rise to the "Foreclosure Matter" claims.**

DLJ/SPS's Motion sought judgment as to those claims that are based on the events referred to as the Foreclosure Matter. DLJ/SPS's Motion pointed out that the Plaintiffs' Complaint and exhibits attached demonstrated that DLJ/SPS had no notice of or involvement in the event that give rise to the claims described as the Foreclosure Matter. In their response, Plaintiffs do not dispute or contest those assertions. In fact, they further describe the Foreclosure Matter claims as being based on '"…Pierce's misinforming Plaintiff Frederick that the foreclosure sale had been continued" when it hadn't and how that prevented Plaintiff Frederick's bidder from attending and bidding at the sale.' (Response. 4)   Plaintiffs also concede the sale was subsequently vacated on their motion.

2

For the reasons set forth in their motion for judgment and in the Joint Reply, DLJ/SPS are entitled to judgment as to Counts III, IV, VI, VIII & X, counts based upon the Foreclosure Matter.

**C.    Matters asserted which otherwise remain undisputed and entitle DLJ/SPS to Judgment.**

    **1.    Plaintiffs do not dispute the public records from the O3 Foreclosure that DLJ/SPS are properly considered and as DLJ/SPS contend.**

Plaintiffs do not dispute that when considering a motion for judgment on the pleadings or motion to dismiss, a court may consider matters of public record or subject to judicial notice as well as exhibits attached to the complaint. *United States v. Wood,* 925 F.2d 1580, 1581-82 (7th Cir. 1991). Matters of public record include court records and other public documents. *Id.*; *Guaranty Bank v. Chubb,* --F.3d--2008 WL 2764631 *2 (7th Cir. 2008); *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir. 1994).

DLJ/SPS attached court records from the 03 Foreclosure Action, an action that Plaintiff referred to in general terms but did not identify as she did the 06 Foreclosure Action. Plaintiffs' Response does not dispute the authenticity of the records or the facts derived from those records. These records are pertinent since, as it relates to the Dixon Contract, they establish that: 1) more than seven months before the Dixon Contract, on August 13, 2004, a judgment of foreclosure and sale had been entered in the O3 Foreclosure in the amount of $ 483,530.26; 2) the state court considered and denied Plaintiffs' motion to compel DLJ to accept proceeds from a proposed sale that would be less than the judgment amount due; 3) comparing the Dixon Contract to the judgment debt, a sale would have been as Plaintiffs allege for less than the judgment amount; and 4) the redemption period expired three (3) months after entry of the August 13, 2004 judgment.

3

### III. REPLY

**A.   Counts I-II based upon the Dixon Contract are barred based on Statute of Limitations.**

Plaintiffs' Count I (Frederick) and II (Frederick's children) claim defendants discriminated against them when they refused to provide a payoff statement or closing documents in April of 2005. DLJ/SPS and Pierce argued that Plaintiffs' FHA and CRA claims were barred by the two (2) year statute of limitations applicable to either claim since the alleged basis for the claim—failure to provide a pay-off quote or closing documents in April of 2005—had occurred more than two years before Plaintiffs brought her cause of action. Plaintiffs concede the limitations period for each of these claims is two (2) years. Plaintiffs' argue however that the limitations period for their Dixon Contract claim should be "equitably tolled" because she lacked sufficient information to know she had a claim until August 2007 when she first received a payoff letter from Pierce that included a figure less than the gross amount of the Dixon Contract. Plaintiffs' arguments must fail for several reasons.

First, as demonstrated by the exhibits attached to Plaintiff's Complaint and public records from the 03 Foreclosure matter, Plaintiffs' latest assertions are simply not true. For example, Plaintiffs attached as an exhibit to their complaint an August 2, 2005 letter from Plaintiff's attorney to SPS, a copy of which is separately attached hereto as Exhibit A[1]. In the letter, Plaintiff's counsel acknowledged Plaintiff had in fact received an earlier payoff. This letter effectively establishes that the factual basis for Plaintiffs claims not accurate and alone should be sufficient to enter judgment.

---

[1] Plaintiffs' exhibits are not all easily identified because of how they are "marked" and attached. Therefore, DLJ/SPS have separately attached this particular exhibit.

4

Second, Plaintiffs' conclusion that the August 23, 2007 letter gave her new information or demonstrates the payoff for the loan in 2005 may have been less than the "Dixon Contract" is equally misplaced. As the pleadings, exhibits and public records demonstrate there were least two separate foreclosure actions resulting in two different judgments entered at different times. As pointed out, in March/April 2005 Plaintiffs were well aware of the amounts due because in August 2004 a judgment of foreclosure had been entered in the O3 Foreclosure and by March/April 2005 the amounts due exceeded the gross amount of the Dixon Contract. Plaintiffs did not challenge the amounts due and by March/April 2005 had tried and failed to move the State Court to compel DLJ to accept lesser sums. Based on the pleadings, exhibits and matters of public record referred to in DLJ/SPS's Motion there can be no dispute that by April 2005, Plaintiffs knew the judgment amount was more than the Dixon Contract would bring.

Third, the doctrine of equitable tolling does not help Plaintiffs. In the first instance, equitable tolling is reserved for situations in which the claimant "has made a good faith error (e.g. brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (quoting *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984)). The doctrine of "equitable tolling" is to be used sparingly and only when despite the exercise of all due care a plaintiff is unable to obtain information bearing upon the existence of his claim. *Mitchell v. Donchin,* 286 F.3d 447, 451 (7th Cir. 2002). Whether the doctrine will apply will depend on whether a reasonable person would be aware of the "possibility" of a claim. *Id.*

Plaintiffs' claim that they were entitled to a payoff statement and closing documents that Defendants refused to provide in March/April 2005. Plaintiffs claim that as a result they were unable to complete the Dixon Contract. Ignoring for a moment that Plaintiffs' allegation about not receiving a payoff statement prior to August 2007 is belied by their own exhibits, Plaintiffs

5

certainly would have known in April/May they hadn't gotten the documents requested and were unable to complete the Dixon Contract. If, as they contend, their claim is based on the failure to provide payoff and closing documents that they conclude they were entitled to then it necessarily follows that Plaintiffs would have been aware of the possibility of that claim more than two years before they brought this action.

Plaintiffs do not claim, allege or demonstrate that DLJ/SPS misled or prevented Plaintiffs from asserting their rights or that Plaintiff was otherwise prevented in some extraordinary way from seeking relief back in 2005. Indeed, based on the records before this court it is obvious that Plaintiffs had been parties to the 03 Foreclosure and sought relief from the court on issues relating to the sale of the property. If, as they now contend, Plaintiffs were not provided what they were entitled to then, in the exercise of due diligence, they could and should have sought relief.

Plaintiffs' have not and cannot offer any reason why failure to give a payoff, closing documents or accept amounts less than the judgment debt when the State Court has already refused to compel that result warrants tolling the statute of limitations.

Finally, Plaintiffs' efforts to somehow connect the August 23, 2007 Pierce letter to the events of 2005 and the Dixon Contract are pointless for several reasons previously pointed out, including: 1) the August 23, 2007 letter has nothing to do with the earlier 03 Foreclosure action which had been reduced to an August 2004 judgment in amounts that by April 2005 exceeded the amount of the Dixon Contract; 2) the August 23, 2007 letter was not authored by DLJ/SPS; 3) as an exhibit, the August 23, 2007 letter specifically provides that the terms and amounts set forth are subject to verification and approval and that "the mortgage holder and our office reserve the right to request additional funds, before or subsequent to the payoff of the loan, to correct an error or omission in the figures made in good faith, whether mathematical, clerical,

6

typographical, or otherwise."; 4) and, as of the August 23, 2007 letter, Plaintiffs were aware that a judgment had been entered in the 06 Foreclosure in an amount equal to $568,377.30 ( Ex. E, Plaintiffs' Complaint).

In April 2005, Plaintiffs were aware of the 03 Foreclosure judgment. Plaintiffs were aware the state court had rejected their efforts to force a sale for less than the judgment. Plaintiffs were aware that the Dixon Contract would not generate sufficient sums to pay the debt due. Plaintiffs were aware they had in fact obtained a payoff prior to August 2005. Plaintiffs were aware of all the facts necessary to determine whether they should have filed suit in 2005 more than two years before they filed this action.

**B.　DLJ/SPS are otherwise entitled to judgment as to Counts I and II for failure to state claims for relief under the FHA.**

Defendants pointed out that Plaintiff failed to state a claim for which relief could be granted under the FHA. DLJ/SPS's motion for judgment argued and Plaintiffs response ignores that record before this court--that Frederick was trying to sell the property to another party for an amount less than the debt after a judgment of foreclosure and sale had been entered and after the State court had refused to their request to compel an short sale--simply do not state or demonstrate any claim under the FHA. For the reasons set forth in DLJ/SPS's Motion they are entitled to judgment.

Plaintiffs' Response argues that she has met the pleading requirements to state a claim under the FHA by meeting what is known as the *"McDonnell Douglas"* standard. However, as DLJ/SPS's Motion pointed out, in the credit discrimination context, the Seventh Circuit has rejected the standard finding instead that a Plaintiff must allege and demonstrate that race was a motivating factor for the alleged discriminatory conduct. *Lattimore v. Citibank savings Bank,* 151 F.3d 712, 715 (7th Cir. 1998)) Plaintiffs have not and cannot allege race was the motivating

7

factor for the actions alleged when their own pleadings as well as the public records before this court demonstrate otherwise.

Moreover, even if the *McDonnell Douglas* standard were applicable, DLJ/SPS are still entitled to judgment because Plaintiffs have not and cannot demonstrate that Plaintiffs met the qualifications for a sale of the property. In *Hickson v. Home Federal of Atlanta,* 805 F. Supp. 1567 (.N.D. Ga. 1992), the case Plaintiffs rely upon, the court dismissed the plaintiff's claims under the FHA based on defendants' refusal to accept a deed in lieu of foreclosure when the plaintiffs failed to allege facts that established what the qualifications for the transaction at issue were and that the plaintiffs met those qualifications.  In this case, Plaintiffs' failures are even more compelling.  Plaintiffs have not cannot demonstrate they met the qualifications for sale of the property when they themselves earlier brought the issue before the State Court and were denied the right to compel DLJ to accept less than its judgment debt.  In other words, the issue of whether Plaintiffs were entitled to sell the property for less than the amount then due had been addressed and resolved by the state court. DLJ actions consistent with that decision can hardly be deemed discriminatory.

Plaintiffs also conclude they had "a right" to sell the property and suggest that none of the defendants dispute that conclusion.  Plaintiffs ignore that DLJ/SPS's motion for judgment pointed out that Plaintiffs had not and could not establish that they had a unfettered right to sell or met all qualifications for a sale.  Besides the fact that the State Court itself had determined Plaintiffs did not have an absolute "right" to sell, as of March/April 2005 the period of redemption found at § 5/15-1603(b) of the Illinois Mortgage Foreclosure Law ("IMFL") had already expired three (3) 3 months after the August 2004 judgment of foreclosure. 735 ILCS §15-1603(b).

C.  **Plaintiffs otherwise have not and cannot state a claim for relief based on the CRA based on the "Dixon Contract".**

DLJ/SPS's Motion adopted Pierce's arguments regarding any CRA claim including that Plaintiffs' failed to allege facts sufficient to show or raise an inference of DLJ/SPS's racial animus, intentional discrimination or that Plaintiffs were deprived of any right to sell based on race. DLJ/SPS supplemented those arguments pointing out that as it relates to the Dixon Contract, Plaintiffs' own allegations as well as the public records from the 03 Foreclosure clearly demonstrate DLJ/SPS acted for reasons other than race; acted consistently with the State Court's refusal to compel a short sale; and acted after the redemption period had expired. Plaintiffs' response is silent on these issues. For the reasons set forth in DLJ/SPS's Motion as well as the reasons and authority set forth in the Joint Reply, DLJ/SPS are entitled to judgment.

D.  **DLJ and SPS are entitled to judgment as to Counts III and IV for failure to state a claim for relief against DLJ or SPS based on the Foreclosure matter.**

As previously pointed out, Plaintiffs' Response does not argue or suggest that they have stated a claim against DLJ/SPS based on the Foreclosure Matters. For the reasons stated in the Joint Reply and DLJ/SPS's Motion, DLJ/SPS are entitled to judgment.

    Respectfully submitted,

    SELECT PORTFOLIO SERVICING, INC. and
    DLJ MORTGAGE CAPITAL


    By: s/Michael J. Weik
        One of Defendants' Attorneys

Michael J. Weik ARDC # 3125782
Craig C. Smith  ARDC #6238126
Smith & Weik LLC
19 S. LaSalle Street, Suite 601
Chicago, IL 60603
312-895-4560

# EXHIBIT A



LAW OFFICES OF

# Glenda J. Gray

ATTORNEY AT LAW

ONE IBM PLAZA
330 NORTH WABASH AVENUE
SUITE 2618
CHICAGO, ILLINOIS 60611

TEL: (312) 755-1010
FAX: (312) 755-1020

VIA FACSIMILE: (801) 270-7713

August 2, 2005

Select Portfolio Servicing
P.O. Box 551170
Jacksonville, FL 32255-1170

Re: Mortgagor: Calvita Frederick
    Loan No.: 0004686119
    Property Address: 4753 S. Dorchester, Chicago, Illinois

To Whom It May Concern:

Please find undercover a new submittal of the short sale package for the above referenced mortgagor.

This package was previously submitted but denied upon the conclusion that the pay-off was less than the purchase price. I have included the letter denying the short sale along with the current pay-off for the property that is good through August 5, 2005.

Include with the package is the appraisal done by the buyer's mortgage company. I am hoping that this will expedite the process of approval.

Due to the number of pages, I will be faxing this package in two parts.

Please advise our office as soon as possible as the buyer is still looking forward to purchasing this property.

If you have any questions, please do not hesitate to give this office a call at the above number.

Respectfully yours,

GLENDA J. GRAY, Attorney
Michelle Brown

/mb
Enc.

PLAINTIFF's Exhibit