# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CALVITA J. FREDERICK, et al., ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | No. 07 CV 7044 |
| ) | Judge Blanche M. Manning |
| SELECT PORTFOLIO SERVICING, INC., ) | |
| DLJ MORTGAGE CAPITAL, and ) | |
| PIERCE & ASSOCIATES, ) | |
|         Defendants. ) | |

**MEMORANDUM AND ORDER**

Hoping to stave off foreclosure, plaintiff Calvita Frederick contracted to sell her home. But the sale fell through because, Frederick alleges, her mortgage company refused to give her a payoff statement and other documents she needed to close. The mortgage company eventually scheduled a sheriff's sale and Frederick lined up a second buyer who intended to bid at the sale. However, according to Frederick, the mortgage company's lawyers lied to her about when the sale was to be held. As a result, her second buyer missed the sale.

Frederick, joined by her two daughters and her ex-husband, have sued the mortgage company, DLJ Mortgage Capital, its law firm, Pierce & Associates, and its servicing agent, Select Portfolio Servicing, Inc. Their complaint contains ten counts alleging numerous claims including that the defendants thwarted Frederick's attempts to line up buyers because she is African-American. Defendant Pierce & Associates have moved to dismiss the claims against it, while defendants SLJ and Select Portfolio have moved for judgment on the pleadings. For the reasons that follow, the motions are granted in part and denied in part as follows: Counts I, II, VII, VIII and IX are dismissed with prejudice; Counts V (as to Pierce & Associates) and X are

dismissed without prejudice; and Counts III, IV, V (as to DLJ and Select Portfolio), and VI are not dismissed.

## BACKGROUND

Except where noted, the following facts are culled from Frederick's complaint and are accepted as true for purposes of resolving the pending motions. *See Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). In March 2005, Frederick entered into a contract to sell her home to Thomasina Dixon. The sale would have allowed Frederick to avoid foreclosure. To complete the sale, Frederick needed copies of several documents including a payoff statement from her mortgage company, DLJ, no later than May 24, 2005, the date her contract with Dixon expired. Frederick alleges that she made numerous requests for the documents, but DLJ failed to honor any of them until more than two years later in August 2007.

As the result of Frederick's inability to sell her home to Dixon, DLJ proceeded with foreclosure proceedings in state court. A sheriff's sale was scheduled for May 10, 2007. Frederick had lined up an investor, Scott Dantuma, to bid for the home at the sheriff's sale. The day of the sale, Frederick received a voicemail from an employee of Pierce & Associates advising Frederick that the sale had been postponed, and that she should look for the new date and time on the firm's website. However, the sale did in fact occur on May 10. As a consequence of the incorrect message left for Frederick, Dantuma did not attend the sale and DLJ bought the home for itself. After discovering that the home had been sold, Frederick succeeded in September 2007 in having the sale vacated. Frederick remains in the home because, according to the defendants, she declared bankruptcy, foreclosing foreclosure.

In their complaint the plaintiffs allege ten counts. Counts I through IV are brought under the Federal Fair Housing Act, 42 U.S.C. § 3605(a), and the Civil Rights Act of 1866, 42 U.S.C. § 1982. In count I, Frederick alleges that the defendants violated the Fair Housing and Civil Rights Acts by refusing to provide her with a payoff letter and other documents on account of her race, thwarting the sale of her home to Dixon and causing her distress. Count II is similar except that it is brought by her two minor daughters and ex-husband based upon the distress they suffered. In count III, Frederick alleges that the defendants violated the Fair Housing and Civil Rights Acts by telling her that the sheriff's sale had been rescheduled in order to thwart her planned sale to Dantuma. Count IV is similar except that it is brought by her daughters and ex-husband.

The remaining claims are brought by Frederick under Illinois law. In Counts V and VI, she alleges that the defendants tortiously interfered with her business relationships with Dixon (Count V) and Dantuma (Count VI). In Counts VII and VIII, Frederick alleges that the defendants violated the duty of good faith and fair dealing they owed under the Illinois Mortgage Foreclosure Act, 735 Ill. Comp. Stat. 5/15-1101, when they thwarted her sale to Dixon (Count VII) and planned sale to Dantuma (Count VIII). Finally, she alleges claims of intentional infliction of emotional distress based upon the derailed sales to Dixon (Count IX) and Dantuma (Count X).

Defendants DLJ and Select Portfolio responded to Frederick's complaint by filing a motion for judgment on the pleadings, while defendant Pierce & Associates filed a motion to dismiss. The bases for the motions are similar. First, the defendants argue that the civil rights and emotional distress claims arising from Frederick's planned sale to Dixon (Counts I, II, and IX) are barred by the applicable two-year statute of limitations. Next, they argue that the civil

rights claims arising from Frederick's planned sale to Dantuma (Counts III and IV) fail to state a claim because the plaintiffs have not adequately alleged that the defendants interfered in the sales on account of Frederick's race. The defendants argue that the allegations in the tortious inteference counts (Counts V and VI) are also inadequate because Frederick has failed to allege some of the elements necessary to succeed on such a claim, such as knowledge and damages. As for the claims that the defendants violated the good faith and fair dealing provisions of the Illinois Mortgage Foreclosure Act (Counts VII and VIII), the defendants argue that the Act contains no such provisions. Finally, the defendants argue that Frederick's emotional distress claim based upon the planned sale to Dantuma (Count X) fails as a matter of law because the conduct alleged was not extreme and outrageous.

## ANALYSIS

Before addressing the merits of the defendants' arguments, the court notes two threshold matters. First, some of the plaintiffs' claims seem to pertain only to defendants DLJ and Select Portfolio, while the others seem to pertain only to defendant Pierce & Associates. But the complaint does not distinguish between the defendants. Rather, it alleges each claim against the "Defendants" generally. Accordingly, the court will treat each claim as though it has been alleged against each defendant.

Second, DLJ and Select Portfolio purport to bring their motion as one for judgment on the pleadings under Rule 12(c). However, a motion under Rule 12(c) may be brought only after an answer has been filed. *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). Because DLJ and Select Portfolio have not yet filed answers, the court will treat their motion as one filed under Rule 12(b)(6). *See Long v. Williams*, 155 F. Supp. 2d 938, 940 n.1 (N.D. Ill. 2001). The

decision to treat the motion as one brought under Rule 12(b)(6) is of little consequence to DLJ and Select Portfolio because the standards under both Rule 12(b)(6) and 12(c) are the same. *See Murray v. Household Bank N.A.*, 386 F. Supp. 2d 993, 995 (N.D. Ill. 2005).

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). According to the Seventh Circuit, this language imposes two hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of (1) what the claim is, and (2) the ground upon which it rests. *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). Second, the factual allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id.* Meanwhile, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *See Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

**I.      Civil Rights and Emotional Distress Claims Based on Dixon Contract (Counts I, II & IX)**

DLJ and Select Portfolio argue that the plaintiffs' civil rights claims under the Fair Housing Act and the Civil Rights Act of 1866 (Counts I & II), as well as the claim for intentional infliction of emotional distress (Count X) that are based upon Frederick's contract with Dixon, are barred by the statute of limitations. The Fair Housing and Civil Rights Acts do not provide a statute of limitations, so federal courts borrow the analogous state statute of limitations. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). The Seventh Circuit has held that a federal civil rights claim is most analogous to a state law personal injury claim,

and in Illinois the applicable limitations period is two years. *See Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1528 (7th Cir. 1990); *In re African-American Slave Descendants Litigation*, 304 F. Supp. 1027, 1068 (N.D. Ill. 2004). Under Illinois law, claims of intentional infliction of emotional distress are also subject to a two-year limitations period. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003).

The plaintiffs agree that the applicable limitations period is two years, but argue that the doctrine of equitable tolling is applicable and keeps their claims from being time-barred. The plaintiffs argue that they were unaware of the defendants' racial animus until Frederick received DLJ's payoff letter in August 2007, and therefore the civil rights claims filed just three months later in November 2007 fall within the two-year limitations period.

Equitable tolling is a state law doctrine that federal courts adopt when adopting a state's limitations period. *See Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). Under Illinois law, the doctrine tolls the running of the statute of limitations until the plaintiff knows or reasonably should know of her injury and knows or should know that it was wrongfully caused. *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981). Equitable tolling also applies where a defendant has actively misled the plaintiff, or where the plaintiff was prevented in some extraordinary way from asserting her rights. *See Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000).

The plaintiffs argue that they did not become aware of their injuries until Frederick finally received the payoff statement in 2007. However, the plaintiffs have not explained how the payoff letter first alerted them to the defendants' racial animus. The court has carefully reviewed the letter and does not see how it alerted Frederick or the other plaintiffs to anything they did not already know—that DLJ failed to timely provide a payoff statement. The plaintiffs' failure to explain how the payoff letter first alerted them to the allegedly racial nature of the

defendants' conduct leaves the court with no basis for concluding that equitable tolling is applicable. Nor have the plaintiffs identified any extraordinary circumstance or other basis for finding the doctrine applicable.

Accordingly, the claims of Counts I, II and IX—which are based on DLJ's failure to provide documents no later than May 24, 2005—are untimely because they were filed in November 2007, beyond the applicable two-year limitations period. As a result, the motions to dismiss Counts I, II and IX are granted. Because under no set of facts would these claims be timely, the dismissal is with prejudice.

## II.     Civil Rights Claims Based on the Dantuma Contract (Counts III & IV)

The plaintiffs allege in Counts III and IV that the defendants violated the Fair Housing and Civil Rights Acts by misinforming Frederick about when the sheriff's sale of her home would occur in order to prevent her from selling her home to Dantuma. DLJ and Select Portfolio seek dismissal of both counts, arguing that the conduct alleged involved only defendant Pierce & Associates, not them. DLJ and Select Portfolio also adopts the arguments made by Pierce & Associates in its motion to dismiss, which are (1) it did not engage in a real estate-related transaction and therefore its conduct was not prohibited by the Fair Housing Act, and (2) the plaintiffs have failed to plead any facts to support their contention that the defendants were motivated by racial animus.

The court will turn first to the claims arising under the Fair Housing Act. The pertinent provision of the Act provides as follows:

(a) In general

> It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of

> such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.
>
> (b) "Residential real estate-related transaction" defined
>
> As used in this section, the term "residential real estate-related transaction" means any of the following:
>
> (1) The making or purchasing of loans or providing other financial assistance—
>
> (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or
>
> (B) secured by residential real estate.
>
> (2) The selling, brokering, or appraising of residential real property.

42 U.S.C. §§ 3605(a), (b).

The defendants contend that they were not engaged in a real estate-related transaction and therefore their conduct was not proscribed by the Fair Housing Act. In support, Pierce & Associates cites cases in which various transactions were held not to be real estate-related transactions, such as transactions involving the sale of property insurance, *see Home Quest Mortgage, LLC v. Am. Fam. Mutl. Ins. Co.*, 340 F. Supp. 2d 1177, 1187 (D. Kan. 2004), or mortgage disability insurance, *see Doukas v. Metropolitan Life Ins. Co.*, 882 F. Supp. 1197, 1202 (D.N.H. 1995).

However, the transaction alleged by Frederick is not merely one tangential to buying or maintaining a home, such as property or mortgage insurance, but rather involved the sale of her home at a sheriff's sale. At the motion to dismiss stage, the court must liberally construe the allegations of the complaint and dismiss only if the plaintiffs have failed to provide notice of the nature of their claim, the basis for it, and plausibly suggested a basis of relief. The plaintiffs have alleged that each of the defendants were involved in selling her home at the sheriff's sale

or, more specifically, were involved in interfering with her planned sale to Dantuma. Read liberally, the complaint satisfies the notice pleading standards applicable in federal court by providing the defendants with notice of the nature of Frederick's claim and suggesting a basis of relief. Accordingly, the plaintiffs have sufficiently alleged a claim against each defendant involving conduct that falls under the Fair Housing Act.

The court turns now to the remaining argument that Frederick has failed to plead any specific facts that show racial animus or intentional discrimination against Frederick in providing the wrong information relating to the foreclosure sale. Frederick need not plead facts with specificity at this stage in the litigation. Rather, she must only allege sufficient facts to suggest the possibility of relief. *See Concentra Health*, 496 F.3d at 776. Accordingly, the defendants' argument that her claims must be dismissed for failure to plead specific facts is unavailing, and the motions to dismiss Counts III and IV are denied.

**III. Tortious Interference Claims Based Upon Dixon (Count V) and Dantuma (Count VI) Contracts**

In Counts V and VI, Frederick alleges that the defendants tortiously interfered with her business relationships with Dixon and Dantuma. Under Illinois law, the elements of tortious interference with a business relationship are: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *City of Rock Falls v. Chicago Title & Trust Co.*, 300 N.E.2d 331, 333 (Ill. App. Ct. 1973). Although Illinois courts have accepted oral contracts in tortious interference cases, the alleged contract must be "in force and effect" at the time of the alleged interference. *See Lusher*

*v. Becker Bros., Inc.*, 509 N.E.2d 444, 446 (Ill. App. Ct. 1987). Finally, the alleged interferer must have knowledge of the existing business relationship between the plaintiff and the third party. *Id.* at 445.

The defendants contend that Frederick has failed to allege required elements of her claims. For instance, the defendants argue that the claims must be dismissed because of the "failure to allege that [the defendants] knew of the existence of these relationships" with Dixon and Dantuma. The defendants also argue that the allegations fail to establish that their conduct was unjustified or that Frederick was damaged as a result. Remarkably, Frederick has provided only a single sentence in response to the defendants' arguments: "Plaintiff has established a claim bases [sic] on Tortious Interference with a Business Relationship with the Dixon Contract and the Foreclosure Matter." (Response to Motion to Dismiss and Motion for Judgment on the Pleadings, R.53, at 13.)

While Illinois law identifies what Frederick must eventually prove to prevail on her state law claims, what she must plead in order to avoid dismissal of those claims is governed by federal law. As noted above, the Federal Rules of Civil Procedure require only that Frederick provide the defendants fair notice of the nature of and grounds for her claims, and plausibly suggest a right to relief. *See Concentra*, 496 F.3d at 776. Under that liberal standard, Frederick's failure to allege specific facts in support of each element of her tortious interference claims is not a basis for dismissal. The court will therefore focus instead on whether Frederick's allegations provide the defendants sufficient notice of the nature and basis of her claim.

In Count V, Frederick alleged that DLJ and its servicing agent, Select Portfolio, refused to provide her with documents she requested in order to prevent her from selling her home to Dixon. Accordingly, the allegations provide DLJ and Select Portfolio notice of the nature of and

basis for the claim and plausibly suggest a right to relief. Accordingly, DLJ and Select Portfolio's motion to dismiss Count V is denied. However, nowhere in the complaint has Frederick identified any interference by defendant Pierce & Associates with Frederick's contract with Dixon. As a result, she has not provided Pierce & Associates fair notice of the basis of her claim against it in Count V. Therefore, Pierce & Associates' motion to dismiss Count V is granted. Frederick is granted leave to replead this claim in accordance with the schedule detailed below.

As for Count VI, the allegations sufficiently identify the nature of the plaintiffs' claim, which is based on the misinformation Pierce & Associates allegedly gave Frederick about when the sheriff's sale would occur. The complaint also gives DLJ and Select Portfolio notice of the claim that they schemed with Pierce & Associate in order to clear the way for DLJ to successfully bid on Frederick's home at the sheriff's sale. Because the allegations of Count VI provide the defendants with sufficient notice of the nature of Frederick's claim, its basis, and plausibly suggest a right to relief, the motions to dismiss Count VI are denied.

### IV. Good Faith & Fair Dealing Claims under the Illinois Mortgage Foreclosure Act (Counts VII & VIII)

The defendants have moved to dismiss these claims because there is no duty of good faith and fair dealing under the Illinois Mortgage Foreclosure Act. In her response brief, Frederick has failed even to acknowledge that these counts are subject to motions to dismiss, or to address the defendants' arguments. As a result, Frederick has forfeited any argument that the Act imposes a duty of good faith and fair dealing by failing to cite to any provision in the Act that imposes a duty of good faith and fair dealing, or to identify any other authority holding that such a duty exists. *See Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 916 (7th Cir.

2005) (undeveloped arguments unsupported by authority are forfeited). Moreover, during the court's own review of the Act it found no provision imposing a duty of good faith and fair dealing upon a mortgagee.

Frederick would have fared no better had she alleged these claims as independent torts rather than as claims under the Act. Under Illinois law, claims of good faith and fair dealing are unavailable as independent tort claims against mortgagees where other remedies are available. *See Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1131-32 (Ill. 2001) ("In *this* case, the plaintiff had recourse to both her specified remedies under the parties' contract *and* traditional tort remedies which she in fact sought to employ but failed to prove."). Frederick had other remedies and, in fact, succeeded in having the sale vacated under the Act based on lack of proper notice. *See* 735 Ill. Comp. Stat. 5/15-1508.

In summary, Frederick cannot state a claim of breach of a duty of good faith and fair dealing under the Illinois Mortgage Foreclosure Act. Accordingly, the motions to dismiss Counts VII & VIII are granted and those claims are dismissed with prejudice.

**V.     Intentional Infliction of Emotional Distress Based on Dantuma Contract (Count X)**

The court previously dismissed Count IX because the claim of emotional distress based on Frederick's contract with Dixon was untimely under the statute of limitations. The court now addresses the claim of intentional infliction of emotional distress in Count X based on Frederick's business relationship with Dantuma.

To prevail on a claim of intentional infliction of emotional distress in Illinois, a party must prove each of the following: (1) extreme and outrageous conduct; (2) the actor intended or knew that his conduct would likely inflict severe emotional distress; and (3) the conduct did in fact cause severe emotional distress. *McGrath v. Fahey*, 126 Ill.2d 78, 86 (1988); *see also Lopez*

*v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006). Conduct is extreme and outrageous only if it exceeds all bound of decency such that no reasonable person could be expected to endure it. *See Matthews v. Homecoming Fin. Network*, No. 03 CV 3115, 2005 WL 2387688, at *7 (N.D. Ill. Sept. 26, 2005). Extreme and outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Further, the distress inflicted must be so severe that no reasonable person could be expected to endure it. *See McGrath*, 126 Ill.2d at 86.

Frederick likens the conduct to which she was subjected to the extreme and outrageous conduct in *Doe v. Calumet City*, 641 N.E.2d 498 (Ill. 1994). But *Doe* involved a police officer who refused to help a woman who had just fled her home after being sexually assaulted by an intruder. *Id.* at 502. When the woman asked the officer to rescue her young children who were still in the home, the officer refused because it might involve damaging her front door. *Id.* He also questioned why she had fled without first grabbing a key, was rude and demeaning to her, and dismissed her as being "hysterical." *Id.* When the woman attempted to reenter her home to save her children herself, the officer held her back. *Id.* When a different officer finally entered the home through an unlocked rear door, he found the intruder raping one child and discovered that the other child had been choked and threatened. *Id.* at 502-03.

Frederick's effort to equate her situation to the one in *Doe* is unavailing. The defendants' alleged attempt to keep her and Dantuma away from the sheriff's sale did not immediately threaten the safety and security of Frederick and her children. Nor was the harm irreversible—to the contrary, Frederick had the sale vacated. Frederick and her children were no doubt alarmed to discover that their home had been sold without their knowledge, but that alarm can hardly be equated to the extreme and outrageous terror inflicted upon the mother and children in *Doe*.

The only other case Frederick cites to support her argument that the defendants' conduct was extreme and outrageous is *Phillips v. Hunter Trails Community Assoc.*, 685 F.2d 184 (7th Cir. 1982). *Phillips* is inapposite for two reasons. First, the plaintiff in *Phillips* did not allege a claim of intentional infliction of emotional distress, and therefore the case does not discuss what constitutes extreme and outrageous conduct. Second, the plaintiffs in *Phillips* were left with nowhere to live as a result of the defendants' exercise of a right-of-first refusal which prevented the plaintiffs from buying a home on account of their race. *Id.* In contrast, Frederick's family was never forced from their home.

Accordingly, taking into account all of the circumstances, a reasonable person could not conclude that the conduct at issue in this case was extreme and outrageous, and therefore the claim of intentional infliction of emotional distress (Count X) is dismissed. Frederick is granted leave to replead this claim in accordance with the schedule detailed below.

## CONCLUSION

For the reasons given, motions to dismiss [40-1] and [47-1] are granted in part and denied in part as follows: Counts I, II, VII, VIII and IX are dismissed with prejudice; Counts V (as to Pierce & Associates) and X are dismissed without prejudice; and Counts III, IV, V (as to DLJ and Select Portfolio), and VI are not dismissed. The plaintiffs are granted leave to file an amended complaint no later than February 6, 2009, for the purpose of re-pleading Counts V (as to Pierce & Associates) and X, and eliminating those counts dismissed with prejudice. The parties shall report for a status hearing on Tuesday, February 17, 2009, at 11:00 a.m.

ENTER:

DATE: January 30, 2009

_Blanche M. Manning_
Judge Blanche M. Manning
United States District Judge